In re Patricia M. KIRKLAND, Debtor.

B–Line, LLC, Successor in interest
to Next Card, Appellant,

v.

Patricia M. Kirkland and Michael
J. Caplan, Trustee, Appellees.

BAP No. NM–07–021.
Bankruptcy No. 01–15748–M7.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Dec. 21, 2007.

Submitted on the briefs: * Linh K. Tran, Seattle, Washington, for Appellant.

Michael K. Daniels, Albuquerque, New Mexico, for Appellees.

Before BOHANON, MICHAEL, and BROWN, Bankruptcy Judges.

## OPINION

BROWN, Bankruptcy Judge.

Appellant B–Line, LLC appeals an order of the bankruptcy court disallowing its claim against Patricia M. Kirkland ("Debtor"). The bankruptcy court sustained the Objection of Michael J. Caplan ("Trustee"), whose only objection to the claim was that it failed to meet the requirements of the Federal Rules of Bankruptcy Procedure because the claimant had not attached any supporting documentation.[1] Holding that 11 U.S.C. § 502(b) provides the exclusive

grounds for disallowance of a claim and that the Rules may not modify substantive rights, we reverse.[2]

## I. BACKGROUND

Debtor filed a voluntary Chapter 13 petition on August 22, 2001. In her schedule of unsecured creditors, Debtor listed a debt for credit card purchases to "Nextcard" in the amount of $5,004. On September 25, 2001, "NextBank, NA/B–Line, LLC" filed a proof of claim (the "Claim") on Official Form 10 in the amount of $5,328.19 as an unsecured claim. There was no supporting documentation attached to the Claim.

The attempt at debt restructuring failed, and the case was converted to a case under Chapter 7 on May 20, 2005. Trustee was appointed to serve as the Chapter 7 trustee. On June 22, 2006, Trustee filed an objection to the Claim (the "Objection"). Thereafter, the Appellant filed a Notice of Transfer of Claim (the "Notice of Transfer"), indicating the Claim had been transferred to it by "Next Card." No supporting documentation was attached to the Notice of Transfer.

The bankruptcy court held a hearing on the Objection on November 15, 2006. Neither the Appellant nor the Trustee offered any additional evidence regarding the Claim. The Appellant asked the bank-

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. *See In re Kirkland,* 361 B.R. 199 (Bankr. D.N.M.2007). Unless otherwise indicated, all future references to a Rule or Rules are to the Federal Rules of Bankruptcy Procedure.

2. In addition, the Trustee filed a Motion to Strike Matters Outside the Appellate Record ("Motion to Strike") on April 27, 2007, object-

ing to statements made by B–Line in its Reply Brief. On May 1, 2007, B–Line filed its response to the Motion to Strike, claiming Trustee had raised new arguments on appeal. The matters raised in both the Motion to Strike and the response were minor, and not considered by this Court because they were irrelevant to the Court's analysis or disposition on appeal. Additionally, both parties agree that matters outside of the record should not be considered on appeal. Therefore, for procedural purposes only, we DENY the Motion to Strike AS MOOT.

ruptcy court to take judicial notice of the schedules filed by Debtor, and the court did so. The Trustee raised an additional argument regarding the Appellant's ownership of the Claim, because it had also failed to attach supporting documentation to the Notice of Transfer. The bankruptcy court did not consider this argument because the transferor had not objected to the Notice of Transfer pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2).[3] But the bankruptcy court sustained Trustee's objection and disallowed the Claim on the ground that, "[Appellant] was required to present some evidence that it has a valid claim. Failing that, the Claim must be disallowed."[4] Appellant now brings this timely appeal.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[5] Neither party elected to have this appeal heard by the United States District Court for the District of New Mexico. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[6] In this case, the order of the bankruptcy court disallowed Appellant's Claim. Nothing remains for the bankruptcy court's consideration. Thus, the decision of the bankruptcy court is final for purposes of review.[7]

## III. STANDARD OF REVIEW

To resolve the issue on appeal we must interpret and apply § 502 and Federal Rule of Bankruptcy Procedure 3001. The interpretation of federal statutes and rules involves legal questions. On appeal, we review legal conclusions under a *de novo* standard.[8] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[9]

## IV. ANALYSIS

Section 502(a) of the Bankruptcy Code provides that, once a proof of claim is filed, it is "deemed allowed," unless a party in interest objects to it. Section 502(b) states that, once an objection is lodged, the court "after notice and a hearing, shall determine the ... claim[.]" It further mandates that the court "shall allow" the claim, except to the extent it falls within one of nine enumerated categories of prohibited claims. The statute does not list among the grounds for disallowance the

---

3. *Id.* at 201 n. 1.

4. *Id.* at 205.

5. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001-1(a) & (d). Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

6. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324

U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

7. *In re Geneva Steel Co.,* 260 B.R. 517, 520 (10th Cir. BAP 2001), *aff'd,* 281 F.3d 1173 (10th Cir.2002) ("An order on an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1).").

8. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir.1996).

9. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

proof of claim's failure to adhere to the requirements of the Federal Rules of Bankruptcy Procedure, namely Rule 3001. Rule 3001(a) requires the proof of claim filed to "conform substantially to the appropriate Official Form," which form imposes a requirement to attach supporting documents. Rule 3001(c) directs creditors filing a proof of claim "based on a writing" to attach either the original or a duplicate of the writing. Rule 3001(f) provides that a claim "filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." But neither the statute nor the Rule expressly addresses the consequence of filing a proof of claim that fails to meet all of the Rule's requirements.

Courts disagree on whether an objection based solely on a claim's nonconformity, in this case failing to attach supporting documents, constitutes a ground for disallowance of the claim. As discussed further below, some courts addressing this issue have held that § 502(b) provides the exclusive basis for disallowance of claims (the "Exclusive View").[10] Other courts find the failure to attach documents to be a valid ground for a claim objection (the "Nonexclusive View"). Once an objection is lodged, according to the Nonexclusive View, if the creditor fails to remedy the defect or to otherwise prove its claim at hearing, then the claim must be disallowed.[11]

In the present case, at the hearing, the Appellant offered only the Claim and the Debtor's schedules, which also reflected an undisputed claim in substantially the same amount. The Appellant's evidence was meager, but it was nevertheless some evidence.[12] The Trustee offered no evidence to disprove the Claim, nor any legal argument that the Claim was unenforceable under non-bankruptcy law. The bankruptcy court disallowed the Claim, based solely on the lack of supporting documentation, thereby adopting the Nonexclusive View.

We adopt the Exclusive View and reverse the bankruptcy court. The Exclusive View adheres to the plain language of § 502(b). It recognizes an objection based on lack of supporting documentation, but only when the absence of documentation would render a claim unenforceable under non-bankruptcy law. Moreover, the Exclusive View supports the overall purpose of the Rules. We reject the Nonexclusive View as unnecessary to curb against false claims or to enable a trustee to fulfill his duty to review claims. And, the Nonexclusive View would invite additional technical objections regarding "substantial conformity" with the Rule.

**10.** Cases adopting the Exclusive View include *In re Cluff*, 313 B.R. 323 (Bankr.D.Utah 2004), *aff'd, Cluff v. eCast Settlement*, No. 2:04–CV–978, 2006 WL 2820005 (D.Utah Sept. 29, 2006); *In re Dove–Nation*, 318 B.R. 147 (8th Cir. BAP 2004); *In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005); *In re Mazzoni*, 318 B.R. 576 (Bankr.D.Kan.2004); *In re Burkett*, 329 B.R. 820 (Bankr.S.D.Ohio 2005); *In re Shank*, 315 B.R. 799 (Bankr.N.D.Ga. 2004); *In re Relford*, 323 B.R. 669 (Bankr. S.D.Ind.2004), *reh'g granted, as amended; In re Kemmer*, 315 B.R. 706 (Bankr.E.D.Tenn. 2004); *In re Moreno*, 341 B.R. 813 (Bankr. S.D.Fla.2006); *In re Shaffner*, 320 B.R. 870 (Bankr.W.D.Mich.2005); *In re Guidry*, 321 B.R. 712 (Bankr.N.D.Ill.2005).

**11.** Cases following the Nonexclusive View include *In re Taylor*, 363 B.R. 303 (Bankr. M.D.Fla.2007); *In re Blue*, No. 03 C 6979, 2004 WL 1745786 (N.D.Ill. July 30, 2004); *In re Stoecker*, 5 F.3d 1022 (7th Cir.1993); *In re Tran*, 369 B.R. 312 (S.D.Tex.2007); *In re Armstrong*, 320 B.R. 97 (Bankr.N.D.Tex. 2005); *In re Henry*, 311 B.R. 813 (Bankr. W.D.Wash.2004); *In re Jorczak*, 314 B.R. 474 (Bankr.D.Conn.2004).

**12.** The schedules are not an admission against interest by the Trustee, but they still provide some evidence, indicating how the Debtor treated this Claim.

## A. The Exclusive View Adheres to the Plain Language of the Statute.

■ The Exclusive View gives effect to the plain language of the statute. Section 502 uses mandatory language, by providing that the court "shall" allow a claim "except to the extent that" one of nine exceptions apply. None of these exceptions recognize the failure to adhere to the requirements of the Rules. The list of exceptions is not preceded by the word "including," which would have established a non-exclusive list.[13] Thus, the statute speaks in absolute terms: the court "shall allow" a claim "except to the extent that" the claim falls into one or more of the enumerated categories of claims.

■ The Rules governing claims cannot vary the terms of the statute by providing additional bases for an objection.

The Bankruptcy Rules do not effect [sic] substantive rights, "for when Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated '[s]uch rules shall not abridge, *enlarge*, or modify any substantive right.'" The alteration or elimination of a creditor's proof of claim effects a substantive right. Bankruptcy Rule 3001 does not enlarge the Debtors' statutory reasons to disallow a claim; it merely "defines the process by which [the claims] may be effected." Therefore, even if an objecting party files an objection asserting facts in a form sufficient to rebut the presumption of Bankruptcy Rule 3001(f), the objection alone does not "implicate any of the statutory rea-

sons which Congress has determined warrant denial of a claim."[14]

To date, only three appellate courts have considered this issue. In *In re Stoecker*,[15] the Chapter 7 trustee objected to a secured creditor's proof of claim on the grounds that its judgment liens were preferential and it did not attach the necessary documentation. The creditor defended in part based on its assertion that its prior settlement with the trustee precluded this subsequent attack on its claim. The bankruptcy court disallowed the claim due to the failure to attach documentation. The district court reversed and remanded to allow the creditor to submit the required documentation.

In *Stoecker*, the Court of Appeals for the Seventh Circuit affirmed the district court in part, ruling that a creditor should be allowed to amend its claim "provided that other creditors are not harmed by the belated completion of the filing."[16] It held that a creditor should not be barred from establishing its claim, as nothing in the statute or the Rules "justifies so disproportionate a sanction for a harmless error."[17] The Seventh Circuit disagreed with the notion that compliance with the Rule was mandatory. "All that the rule says, so far as bears on this case, is that the filing of a proof of claim with the required documentation is prima facie evidence that the claim is valid."[18] The case was then remanded to consider extrinsic evidence as to the intent of the parties in entering into the settlement agreement. In this context, the Seventh Circuit did not

---

13. *See* 11 U.S.C. § 102 ("In this title—(3) 'includes' and 'including' are not limiting.").

14. *In re Cluff*, 313 B.R. 323, 332 (Bankr. D.Utah 2004), *aff'd, Cluff v. eCast Settlement*, No. 2:04–CV–978, 2006 WL 2820005 (D.Utah September 29, 2006) (footnotes omitted).

15. 5 F.3d 1022 (7th Cir.1993).

16. *Id.* at 1028.

17. *Id.*

18. *Id.*

have to reach the ultimate question of whether the failure to amend would be grounds for disallowance under the statute.

In *In re Heath*,[19] Chapter 7 debtors filed objections to several proofs of claim filed by credit card companies. The debtors had originally listed these debts in lesser amounts in their schedules, without any designation that they disputed the debts. The bankruptcy court refused to disallow the claims in their entirety and instead reduced them to the amounts listed in the schedules. In doing so, the bankruptcy court based its ruling in large part on the "admissions" in the debtors' schedules and its perception that the debtors were attempting to obtain a windfall at the creditors' expense.[20]

On appeal, the *Heath* court adopted the Exclusive View. It refused to base its decision on arguments of estoppel or any evidentiary admissions in the schedules, noting that "amendments to bankruptcy schedules are permitted as a matter of course any time before a case is closed."[21] Instead, it held that § 502(b) sets forth the exclusive grounds for claims objections. It acknowledged the split of authority and in particular the reasoning adopted by some courts that a trustee would be unfairly hampered in his duty to review claims without the necessary documentation. But it rejected this possible justification for disallowance on the basis of the mandatory language employed in the statute.

In *In re Dove–Nation*,[22] the Bankruptcy Appellate Panel of the Eighth Circuit affirmed the bankruptcy court's decision to overrule the Chapter 13 debtor's claims objections based solely on the failure to attach necessary documentation. In *Dove–Nation* as well, the debtor had originally scheduled the debts, without any indication of a dispute. The court found that the proofs of claims substantially complied with the rules, having attached summaries that invited requests for further documentation. In what is admittedly dictum, it held that "even if the claims had not substantially complied with Rule 3001, the claims are still allowed claims under Section 502 of the Bankruptcy Code unless the Debtor establishes an exception under Section 502(b)."[23]

Many bankruptcy courts have struggled with this issue, with differing results. Most of the reported decisions arise in the context of an objection lodged by the debtor, rather than a trustee, and most involve claims for credit card debt. In some cases, while espousing the Exclusive View, they have expressly stated, in dictum, that their conclusions might differ if the objecting party was a trustee.[24] In some cases, although adopting the Exclusive View, the courts have based their rulings in part on the fact that debtors should not be heard to object to claims they have previously scheduled as undisputed in an attempt to obtain a windfall.[25] Others do not expressly limit their rulings on the basis of the parties' identities, but they do arise in the

19. 331 B.R. 424 (9th Cir. BAP 2005).

20. *Id.* at 427.

21. *Id.* at 431 (internal quotation marks omitted).

22. 318 B.R. 147 (8th Cir. BAP 2004).

23. *Id.* at 152.

24. *See In re Cluff*, 313 B.R. 323, 343 (Bankr. D.Utah 2004), *aff'd, Cluff v. eCast Settlement*, No. 2:04–CV–978, 2006 WL 2820005 (D.Utah September 29, 2006); *In re Mazzoni*, 318 B.R. 576, 579 n. 14 (Bankr.D.Kan.2004).

25. *In re Relford*, 323 B.R. 669, 676 (Bankr. S.D.Ind.2004); *In re Kemmer*, 315 B.R. 706, 717 (Bankr.E.D.Tenn.2004).

context of a debtor objection to a proof of claim for a credit card debt.[26] In two reported cases involving a trustee's objection to a claim on the basis of lack of documentation, the courts have overruled the objections but on the basis of somewhat different reasoning.[27] Thus, this Court agrees with the dissent that it is a bit of a misnomer to lump these cases into one camp or the other because they each differ somewhat in their reasoning and each reported decision can be distinguished on some basis from the present case. While this cuts against the Nonexclusive View as much as it does the Exclusive View, it counsels us to decide this issue, not based on a scorecard of prior decisions, but only on the basis of the language of the statute and the purpose and intent of the Rules.

While the facts of this case require the Court to navigate uncharted waters in this jurisdiction, the language of the statute is clear and unambiguous in establishing an exclusive list of grounds for disallowance. It does not include a failure to conform with the Rule's requirements. And, the statute makes no distinctions based on the identity of either the objector or the claimant.

## B. The Exclusive View Preserves an Objection Regarding Lack of Documentation that Renders the Claim Unenforceable.

■ Section 502(b)(1) recognizes an exception to claim allowance when the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Based on this provision in the statute, the Exclusive View recognizes objections to a claim based on lack of documentation, but only when the lack of documentation may render the claim unenforceable as a matter of law. By way of an example pertinent to this case, many states have enacted statutes that render oral credit agreements unenforceable.[28] New Mexico law, applicable in this case, has no such statutory provision.[29] It continues to apply the common law,[30] which has never required credit agreements to be in writing, unless the agreement cannot be performed within one year.[31] Even in the case of an agreement that falls under a statute of frauds, a party may be able to prove the existence of a lost writing as long as a writing existed at one time.[32] The Truth–In–Lending Act ("TILA")[33] requires credit agreements to be in writing,

---

**26.** *In re Moreno*, 341 B.R. 813, 816–20 (Bankr.S.D.Fla.2006); *In re Guidry*, 321 B.R. 712, 714–15 (Bankr.N.D.Ill.2005); *In re Shank*, 315 B.R. 799, 811–12 (Bankr.N.D.Ga. 2004).

**27.** *In re Shaffner*, 320 B.R. 870, 873–80 (Bankr.W.D.Mich.2005) (relying primarily on the informal proof of claim doctrine); *In re Burkett*, 329 B.R. 820, 825–30 (Bankr. S.D.Ohio 2005) (espouses Exclusive View, but in dictum posits that if the claim is not scheduled by the debtor and does not include documentation, then a valid objection may exist).

**28.** *See* John L. Culhane, Jr., *Lender Liability Limitation Amendments to State Statutes of Frauds*, 45 Bus. Law. 1779, 1781–84 (1990).

**29.** *See id.* at 1780–81 & n. 10 (explaining that New Mexico's attempt to pass such a statute failed in 1989).

**30.** N.M. Stat. § 38–1–3 (1978); *Aragon v. Rio Costilla Coop. Livestock Ass'n*, 112 N.M. 152, 812 P.2d 1300, 1303 (1991).

**31.** *See, e.g.*, Culhane at 1783 & n. 26.

**32.** Restatement (Second) of Contracts § 137 (1981).

**33.** 15 U.S.C. § 1601, *et seq.*

but a violation of this requirement only provides a borrower with a monetary claim against the lender.[34] It does not invalidate an otherwise valid agreement.[35] Thus, lack of documentation may or may not be grounds for disallowance under § 502(b)(1). But, under the Exclusive View that we adopt today, if a trustee intends to assert a legal argument that the claim is unenforceable under an agreement or applicable law, he must assert a good faith basis for these grounds in his objection. In this case, the Trustee provided no such grounds and the bankruptcy court made no such ruling.

### C. The Exclusive View Supports the Overall Purpose of the Rules.

In determining the legal effect of the requirements imposed by the Rules governing claims, this Court's construction should support the overall purposes of the Federal Rules of Bankruptcy Procedure. Rule 1001 states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Thus, any question regarding the interpretation or application of the Rules must bear these overall purposes in mind.

Rules 3001 through 3008 govern the claims allowance process. They set forth when a claim should be filed, who may file a claim, what a claim should include, how objections may be lodged, the burden of proof in claims disputes, and the process for obtaining a judicial determination or redetermination. Rule 3007, which governs objections to claims, sets forth no grounds for an objection. It merely provides a process for asserting the objection and a deadline for a response to the objection. Reading Section 502 and these Rules together, they establish a process by which the vast majority of claims will be allowed without any need for a hearing or a judicial determination. But if the creditor fails to comply with the Rules' requirements, this speedy and inexpensive process may be derailed. In the face of a proper objection, the creditor will have to establish its claim at hearing, bearing whatever burden of proof exists in proving such a claim in a non-bankruptcy arena.

The Exclusive View fosters the speedy and inexpensive determination of claims in bankruptcy. If this Court were to adopt the Nonexclusive View, it would be imposing a duty on trustees to file an objection to every proof of claim that fails to attach supporting documents, or is otherwise deficient, even in cases where trustees anticipate making distributions to creditors. It would greatly increase the number of claims objections, hearings, and judicial determinations of claims.

More importantly, the Exclusive View aids in the just determination of claims. Under the Nonexclusive View, if the claimant fails to respond, then despite the fact that there is no known actual dispute regarding the claim, the claim would be disallowed. In Chapter 7 cases, this could lead to a windfall to some creditors at the expense of others, by reducing the pool of claims sharing in the pro rata distribution.

---

**34.** *See* 15 U.S.C. § 1640(a) (defining civil remedies available under the Act); *see also Burgess v. Charlottesville Sav. & Loan Ass'n,* 477 F.2d 40, 45 (4th Cir.1973) ("[A] proper construction of the [TILA] indicates that any private action for violation thereof is limited to the statutory remedy and can provide no basis for other relief."). A borrower may also invoke a right of rescission under TILA, but only if the credit transaction involves a security interest on the principal dwelling of the borrower. 15 U.S.C. § 1635(a).

**35.** *Ixonia State Bank v. Ingersoll (In re Ingersoll),* 8 B.R. 912, 919 (Bankr.W.D.Wis.1981); *First Citizens Bank & Trust Co. v. Owings,* 151 Ga.App. 389, 259 S.E.2d 747, 748–49 (1979).

In Chapter 13 cases, it might provide a windfall to debtors who would have less claims to pay.[36] And we bear in mind that any construction of the Rule will apply not only to large consumer lenders who merge with, or purchase loan portfolios of, smaller lenders, but it will apply as well to small companies that provide goods and services to a debtor, but fail to attach an invoice, and to the ex-spouse who fails to attach a copy of the court order establishing maintenance and child support payment obligations.

Although a creditor may be able to amend its proof of claim or appear at a hearing to establish the claim, the practical reality in bankruptcy is that many claim objections are never responded to by affected creditors. Sophisticated creditors may simply choose not to respond. In fact, it may not be cost-effective. In the typical Chapter 7 case, the percentage of distribution on claims is small and entities generally cannot appear in federal court, by filing a response or otherwise, without representation of counsel admitted in the state in which the court resides. Thus, creditors who are non-natural persons may be forced to spend more to respond to a claim objection than they could ever hope to realize from a distribution.[37] Unsophisticated creditors, like the small business owner and child support creditor, may not appreciate the need to respond, are too intimidated to enter into the court hearing process without the aid of counsel, and/or may not be able to afford counsel. The Exclusive View does not deprive these creditors of their claims simply because

they did not attach documentation or failed to appear at a hearing to establish the claim.

### D. The Nonexclusive View is Not Necessary to Curb Against False Claims.

It is not necessary to adopt the Nonexclusive View in order to discourage false claims. Congress has already provided a disincentive by establishing criminal penalties to punish offenders. 18 U.S.C. § 152(4) provides that a person who "knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney" shall be "fined under this title, imprisoned not more than 5 years, or both." Official Form 10 itself warns: "[p]enalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571."

### E. The Nonexclusive View Elevates the Trustee's Duty to Review Claims Beyond that Envisioned by Congress.

According to the Nonexclusive View, trustees will be hampered in their ability to fulfill their statutory duty to review claims unless the courts require full compliance with Rule 3001. Section 704(5) requires a trustee to "examine proofs of claims and object to the allowance of any

---

**36.** *In re Kemmer,* 315 B.R. 706, 717 (Bankr. E.D.Tenn.2004) (acknowledging Chapter 13 debtors' objection would lead to a windfall to the debtors).

**37.** *In re Shank,* 315 B.R. 799, 812 (Bankr. N.D.Ga.2004) ("Given the uncertainties of eventual recovery in a given bankruptcy case,

many creditors may have no economic incentive to respond to an objection to a claim even if the claim is valid.... Rule 1001's directive requires a bankruptcy court to apply the bankruptcy rules to permit creditors to realize their fair share in a bankruptcy case without unnecessary expense.")

claim that is improper."[38] But this duty is more narrowly circumscribed than that envisioned by the Nonexclusive View.

Section 704 of the Bankruptcy Code sets forth several duties of a Chapter 7 trustee. Many of the duties are expressed in absolute terms, for example, the trustee shall "collect and reduce to money the property of the estate;"[39] "be accountable for all property received;"[40] and "investigate the financial affairs of the debtor."[41] By way of contrast, § 704(5) provides that the trustee shall "examine proofs of claims and object to the allowance of any claim that is improper," but states that he shall do so only "if a purpose would be served."[42] This language implies that trustees should exercise discretion in this area. This discretion should not be employed to attempt to knock down every claim that is technically deficient, but should be reserved for use in instances where they have reason to believe that all or part of the claim may not be allowable for reasons specified in § 502(b).[43]

In both the Code and the Rules, Congress has recognized a trustee's need for information beyond what is provided in the debtor's schedules. First, Congress has established a statutory framework that encourages the filing of proofs of claims. This framework can be viewed in comparison to the different treatment of claims in Chapter 11. In Chapter 11 cases, both § 1111(a) and Rule 3003(b)(1) provide that a debt scheduled by the debtor is deemed filed and shall constitute prima facie evidence of the validity and amount of the claim, unless the debt is scheduled as disputed, contingent, or unliquidated, without any filing of a proof of claim. In Chapter 7 and 13 cases, however, Congress has not

---

**38.** 11 U.S.C.A. § 704(5) (West 2003). Following the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the sections under 704 were renumbered so that, for example, § 704(5) became 704(a)(5). The pertinent portion of this statute has not changed, but we refer to the former designation because this case, filed before the adoption of BAPCPA, is governed by the former version of § 704.

**39.** *Id.* § 704(1).

**40.** *Id.* § 704(2).

**41.** *Id.* § 704(4).

**42.** The legislative history on § 704(5) includes the following statements from the Senate Report:

> The trustee's principal duty is to collect and reduce to money the property of the estate for which he serves, and to close up the estate as expeditiously as is compatible with the best interests of parties in interest. He must be accountable for all property received, and must investigate the financial affairs of the debtor. *If a purpose would be served (such as if there are assets that will be distributed), the trustee is required to examine proofs of claims and object to the allowance of any claim that is improper.* If advisable, the trustee must oppose the discharge of the debtor, which is for the benefit of *general unsecured creditors whom the trustee represents.*

S. Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5879 (emphasis added). This report underscores the distinction between those duties of a trustee that are absolute and those that are to be exercised with discretion. Admittedly, this report seems to define "if a purpose would be served" broadly, as any time a trustee anticipates a distribution to creditors. But it also limits the filing of objections to claims that are "improper." It in no way suggests an expanded view of an "improper" claim beyond that contemplated in § 502(b). It further underscores that the trustee represents the general unsecured creditor body as a whole. His duties should not be construed in such a way that he undermines them by raising technical objections to claims not contemplated by § 502(b).

**43.** *See In re Riverside–Linden Inv. Co.,* 85 B.R. 107, 111 (Bankr.S.D.Cal.1988) ("A trustee, while having the right to investigate claims without court authority, must exercise this right judiciously.").

provided that the schedules alone will grant a claim this status.[44] By not affording the schedules prima facie evidence status in Chapter 7 or 13 cases, Congress has given creditors an incentive to file claims.

Congress gave additional support to trustees in § 521(a)(3), which provides that the debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title."

Of course, one of the trustee's duties under section 704(a)(5) is to examine proofs of claims and object to the allowance of any claim that is improper. Federal Rule of Bankruptcy Procedure 4002(4) implements section 521 and provides that the debtor must assist the trustee in the administration of the estate and examining proofs of claims.

*The proper procedure under section 704(a)(5) is for the trustee to request that the debtor examine the proofs of claims and report to the trustee as to whether they are proper.* If the debtor fails to cooperate, the trustee should request that the court order the debtor to do so.[45]

Nothing in this Court's opinion limits the ability of a trustee to conduct either formal or informal discovery on a particular claim. And if the claimant resists discovery, a trustee may file an objection if he has a good faith basis for asserting a § 502(b) objection. For example, if state law provides that the type of claim involved is barred by the statute of frauds if not in writing, then a trustee may have a good faith basis for an objection based on the statute of frauds. The Trustee in this case did not raise such an objection, and in

fact may not have a basis for such under New Mexico law.

But we are not suggesting that trustees must initiate discovery on every proof of claim filed without documentation. There is a fundamental difference between the majority and the dissent over the nature of the trustee's review process. The dissent appears to believe that this duty requires a trustee to substantiate each claim. The majority would expect that a trustee would not file an objection unless there was some reason to believe the claim was improper. In a case such as the present matter, where the Debtor has scheduled the same credit card debt in substantially the same amount, what purpose is to be served by initiating litigation over this Claim? On the other hand, when the claim itself raises a red flag, then the trustee ought to investigate and, if a purpose would be served, file a subsequent objection. For example, in *In re Broadband Wireless International Corp.*,[46] the proof of claim at issue attached documents that indicated the creditor had dealt with a related, but separate entity, not the debtor. In that Chapter 11 case, the debtor-in-possession filed the objection, but even if that case had been filed as a Chapter 7 case, a review of the claim itself would have raised a red flag.

The dissent contends that the Court should make a distinction, as do some courts, between the grounds for filing an objection, and those for disallowing a claim. Thus, according to the dissent, it would be proper to object on the basis of no documentation, and then if the creditor did not amend or appear at the hearing to "prove" its claim, the claim would be disallowed because the burden never shifted to

---

**44.** 11 U.S.C. § 1302(b)(1) requires a Chapter 13 trustee to "perform the duties specified in ... [§ ] 704(5)[.]"

**45.** 6–704 *Collier on Bankruptcy* ¶ 704.09[1] (15th ed.1999) (emphasis added) (footnote omitted).

**46.** 295 B.R. 140 (10th Cir. BAP 2003).

the trustee to object. But at the end of this process, a court would end up disallowing a claim even though no § 502(b) grounds have been asserted. Consider as well a case in which a former spouse files a claim for past due child support, but does not attach the court order establishing the amount of the support. If the trustee objects due only to the lack of documentation, and the former spouse fails to take any action to request a hearing, must the court deny the claim? Even if the debtor scheduled the same debt? [47]

In adopting Rule 3001(c), Congress has not set forth a process for the disallowance of claims without supporting documentation. Other portions of Rule 3001(c) make clear that the Rule does not attempt to affect substantive rights over the issue of supporting documentation. This Rule also provides that "[i]f the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." For example, if a creditor attached an explanation that his basement had flooded and all his records were destroyed, then Rule 3001(c)'s requirements would have been satisfied. His claim would nevertheless be treated as prima facie evidence of the claim's validity and amount. Yet the trustee in this hypothetical would have no further evidence to aid in his review or "sifting" of the claims.

Similarly, Rule 3001(d) requires a creditor who claims a security interest in property of the debtor to attach evidence of the perfection of its security interest to its proof of claim. But a long line of cases, from the Supreme Court on down, have held that creditors do not have to file any proof of claim, let alone one which attaches evidence of perfection, in order to maintain their lien right.[48] "Unless the collateral is in the possession of the bankruptcy court or the trustee, the secured creditor does not have to file a claim." [49] If a court specifically rules that a particular creditor's debt is unenforceable or the lien invalid, then such a ruling would change this result. But the mere failure to file a proof of claim with evidence of perfection does not have the effect of limiting or invalidating a secured creditor's lien rights.[50]

Congress could have gone one step further and provided in § 502(b) that nonconforming proofs of claims would be subject to disallowance, or at least provided that the list of excluded claims was non-exclusive. It could have made the duty under § 704(5) an absolute duty to object to nonconforming claims. But instead of using a stick to punish creditors who file nonconforming proofs of claims, Congress provided a carrot in the form of a streamlined process for "proving" their claims.

## F. The Nonexclusive View Invites Additional Objections Regarding "Substantial Conformity."

We further reject the Nonexclusive View because it would open a Pandora's box of issues as to when a proof of claim is deemed to substantially comply with the Rules. First, it would encourage disputes as to whether the attached documents are sufficient. The documentation requirement enunciated in Rule 3001(c) differs

---

**47.** The dissent suggests that such a claim would be allowed nonetheless because of its priority status. *See Dissent* at 368. But priority status does not relieve a claimant of the need to file a proof of claim.

**48.** *In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984).

**49.** *Hoxworth v. Blinder (In re Blinder),* 74 F.3d 205, 210 (10th Cir.1996) (citing *Tarnow* at 465).

**50.** Section 506(d)(2) codified this longstanding judicial interpretation. *Tarnow,* 749 F.2d at 467.

from the requirement set forth on the front side of the Official Form, and differs also from the description of this requirement on the back side of the Official Form. Rule 3001(c) states that when a claim is "based on a writing, the original or a duplicate shall be filed with the proof of claim." In section 7 of Official Form 10,[51] entitled "Supporting Documents," it directs the claimant to:

> Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

Paragraph 7 of the Instructions appearing on the back of Official Form 10 states:

> You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

The language in Rule 3001(c) suggests that a credit card company should attach the original credit agreement, as well as evidence of the actual use of the credit card. The language on the front and back of the Official Form might not require this agreement. The form requires only "supporting documents." But how much support is necessary? Some courts have struggled to define what documentation is required, with varying success.[52]

Aside from questions regarding documentation, what other technical deficiencies would support an objection under the Nonexclusive View? For example, section 2 of Official Form 10 requires the claimant to indicate "date debt was incurred." Would the claim be subject to disallowance if this section is left incomplete? Of course, courts can delineate and construe Rule 3001(a)'s requirement that a proof of claim "conform substantially" to the Official Form. But would this effort be in keeping with Rule 1001's mandate that the Rules be construed to secure the just, speedy, and inexpensive determination of every case and proceeding? And with § 502(b)'s limitation on the grounds for claim objections? Would any purpose be

---

**51.** The Claim at issue appears on a prior version of Official Form 10, last revised in April, 2001. The current version of the form was revised in April, 2007, but there are no material changes for purposes of this discussion.

**52.** See e.g., In re Heath, 331 B.R. 424, 432–33 (9th Cir. BAP 2005).

There is no uniform standard for what must be contained in such a summary. Although some breakdown of interest and other charges must be included, it is unclear whether this should cover the entire account history, the last several billing cycles, or only those charges not reflected in the last prepetition monthly statement. See Cluff, 313 B.R. at 335 ("[T]he summary attached to the proof of claim should: (i) include the amount of the debts; (ii) indi-

cate the name and account number of the debtor; (iii) be in the form of a business record or some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving a breakdown of those elements."); In re Armstrong, 320 B.R. 97, 105 (Bankr.N.D.Tex.2005) (similar list); In re Henry, 311 B.R. 813 (Bankr.W.D.Wash. 2004) (same, but also requiring copy of underlying credit card agreement); Kemmer, 315 B.R. at 714–15 (summary adequate, not necessary for creditor to attach copy of underlying credit card agreement); In re Sandifer, 318 B.R. 609, 611 (Bankr. M.D.Fla.2004) ("[t]wo to four months of credit card statements" attached to some amended proofs of claim were adequate).

served, when both the debtor and the creditor agree on the amount and validity of the claim as they apparently do in the present case? Why should the Trustee, who administers the estate on behalf of all creditors generally, pit one creditor against the rest over a technical deficiency?

## V. CONCLUSION

In conclusion, for the reasons stated, we adopt the Exclusive View's construction of Rule 3001, reverse the bankruptcy court, and remand for the entry of an order consistent with this decision.[53]

MICHAEL, Bankruptcy Judge, dissenting.

I respectfully dissent. Today's ruling eliminates the ability of a trustee in a Chapter 7 bankruptcy case to object to a proof of claim filed without the documentation necessary for effective review of the claim. Although the majority recognizes the duty of a Chapter 7 trustee to review claims and object where appropriate,[1] they fail to explain how a trustee deprived of any information regarding the claim is to formulate and present a cogent objection. I would affirm the decision of the bankruptcy court.

## I. Facts of the Case.

Our facts are simple. B–Line filed the Claim[2] without supporting documents. Thereafter, the Trustee asked B–Line to provide some documentation to establish the validity of the Claim. B–Line admitted it could not do so.[3] After an evidentiary hearing, the bankruptcy court found that: (1) B–Line had the burden of proof to establish the validity of the Claim; (2) due to the lack of documentation attached to it, the Claim was not entitled to a presumption of *prima facie* validity; and (3) in response to the Trustee's Objection, B–Line offered no evidence in support of the Claim. As a result, the Claim was not allowed. Such a result hardly seems earth-shattering.

## II. Grounds for Affirmance

Unlike the majority, I do not view disallowance of the Claim as "based *solely* on the lack of supporting documentation" attached to the proof of claim.[4] Rather, the

---

**53.** The dissent takes issue with the remand of this matter, claiming it is "vague." *Dissent* at 369–70. It asserts that the Court must clarify whether the bankruptcy court must allow the Claim or whether the Trustee may file an amended objection. The Trustee's ability to amend, or for that matter, B–Line's ability to amend its Claim to state that the supporting documents have been lost, are issues not properly before this Court. Our ruling is expressly limited to overruling the bankruptcy court's disallowance of the Claim based solely on the lack of supporting documentation.

**1.** *See Majority Opinion* at 348 ("[I]f a trustee intends to assert a legal argument that the claim is unenforceable under an agreement or applicable law, he must assert a good faith basis for these grounds in his objection.").

**2.** The defined terms used herein are those as defined in the *Majority Opinion*.

**3.** Although the bankruptcy court took judicial notice of the schedules, it ruled that they were of no evidentiary value against the Trustee. *See In re Kirkland*, 361 B.R. 199, 201 (Bankr. D.N.M.2007). This ruling was not appealed, and I therefore conclude, as the bankruptcy court concluded, that B–Line offered (and possessed) no evidence to support its Claim. The majority seems to differ, suggesting that "[t]he Appellant's evidence was meager, but it was nevertheless some evidence." *See Majority Opinion* at 344. I believe that the bankruptcy court acted properly when it disregarded the Debtor's schedules, and therefore correctly concluded that B–Line presented *no* evidence in support of its Claim.

**4.** *Majority Opinion* at 344 (emphasis added).

Claim was disallowed because, after ample opportunity to produce supporting documents following the Objection, B–Line acknowledged it could not do so.[5] In reviewing the bankruptcy court's decision to disallow the Claim, three questions must be answered. The first is whether the bankruptcy court correctly permitted the lack of supporting documentation attached to B–Line's proof of claim to form the basis of the Trustee's Objection to the Claim. Next, we must consider whether the bankruptcy court correctly refused to shift the burden of proof from B–Line to the Trustee. Finally, we must ask whether the bankruptcy court's disallowance of the Claim in this case was permissible under 11 U.S.C. § 502(b)(1).[6]

## A. Lack of Documentation as Basis for Objection

On appeal, B–Line argues that Trustee should not be allowed to object to the Claim solely on the basis that its proof of claim lacks any supporting documentation. Some bankruptcy courts make no distinction between *objections to claims* and *disallowance of claims*, and have taken the position that the only bases for objecting

to a claim are those enumerated in § 502(b).[7] Certainly, § 502(b) provides the only bases for *disallowing* a claim, but § 502(b) says nothing about the bases for *objecting* to a claim. Allowing a Chapter 7 trustee to object to a claim filed without supporting documents does no violence to § 502(b), and does not affect a substantive right. In this case, it only permits the Trustee to require B–Line to prove that it holds a viable claim that should be paid from property of the bankruptcy estate.

Pursuant to § 704(5), a Chapter 7 trustee is required to "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."[8] This duty is an integral part of a trustee's responsibility to ensure proper distribution of the estate's assets. When a claim is presented:

> [T]he bankruptcy court whose aid is sought for enforcement of an asserted claim is not bound to treat the tendered proof as conclusive. When objections are made, it is duty bound to pass on them. That process is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective

5. According to B–Line, it informed the bankruptcy court that "NextBank" (the company from which B–Line acquired the claim) had ceased doing business and no longer exists. *Appellant's Brief* at 3.

6. Title 11 U.S.C. § 502(b)(1) provides that a claim shall be allowed, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

7. The Ninth Circuit BAP interprets § 502(b) to provide the only grounds for an objection

to a proof of claim. *In re Heath*, 331 B.R. 424, 431 (9th Cir. BAP 2005). *See also In re Dove–Nation*, 318 B.R. 147, 150 (8th Cir. BAP 2004); *In re Burkett*, 329 B.R. 820, 826 (Bankr.S.D.Ohio 2005); *In re Shank*, 315 B.R. 799, 812 (Bankr.N.D.Ga.2004). The majority appears to agree, but somewhat conflates the issues of *objections to claims* and *disallowance of claims*. *See Majority Opinion* at 343–44.

8. The legislative history to this provision states, "[i]f a purpose would be served (such as if there are assets that will be distributed), the trustee is required to examine proof of claims and object to the allowance of any claim that is improper." S.Rep. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5879.

be liquidation or reorganization. Without that sifting process, unmeritorious or excessive claims might dilute the participation of the legitimate claimants.[9]

To hold that a trustee cannot object to a creditor's proof of claim filed without supporting documents significantly curtails this important "sifting process," and directly contravenes the duties imposed upon a Chapter 7 trustee by § 704(5).[10]

Courts that have held § 502(b) provides the only basis for objecting to claims reason that allowing an objection on the basis of lack of supporting documentation is tantamount to permitting § 502 to be substantively altered by a rule (Rule 3001),[11] which is, of course, prohibited.[12] While the substantive law regarding allowance of claims is governed by §§ 501 and 502, the procedures regarding allowance of claims are found in the Federal Rules of Bankruptcy Procedure. These procedures permit a party to gather information sufficient to determine whether a claim should or should not be allowed.[13]

Here, the Trustee is in effect saying, "the Claim is not entitled to a presumption of validity. Without more information, I cannot tell whether this is a valid claim. Therefore, I object unless and until the creditor gives me something which establishes they are entitled to payment." The filing of such an objection is well within a trustee's discretion. Moreover, the sustaining of an objection to claim where the creditor admits it cannot establish its claim is proper.

To the extent the majority states that "if a trustee intends to assert a legal argument that the claim is unenforceable under an agreement or applicable law, he must assert a good faith basis for these grounds in his objection," [14] the argument elevates form over substance. The most difficult question to answer is the easiest question to ask: how is a trustee supposed to determine whether "the claim is unenforceable under an agreement or applicable law" when denied access to the documentation which created the claim? In this case, where B–Line responded to the Objection by stating, "I cannot establish my claim," I am at a complete loss as to the basis for allowing the claim.[15]

---

9. *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D.Fla.2007) (quoting *Gardner v. State of N.J.*, 329 U.S. 565, 573, 67 S.Ct. 467, 91 L.Ed. 504 (1947)).

10. A Chapter 13 trustee is charged with performing the same duties pursuant to § 1302(b)(1).

11. *See Majority Opinion* at 345; *In re Dove–Nation*, 318 B.R. 147, 150–151 (8th Cir. BAP 2004).

12. 28 U.S.C. § 2075 provides in part as follows:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.
Such rules shall not abridge, enlarge, or modify any substantive right.

13. *See In re Taylor*, 363 B.R. at 308 ("The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense.").

14. *Majority Opinion* at 348.

15. For example, what if, when a claim based upon a writing is filed without documentation, the trustee asks for this information formally or informally and the creditor refuses? Under the majority opinion, would such failure create a basis for a trustee to object to a claim? The trustee still could not raise what the majority would consider to be a "substantive" objection to the claim, because the trustee was not yet privy to the documents which created the claim. If the trustee may not advance an objection under these circumstances, isn't the creditor with defective docu-

The logic of allowing objections to proofs of claim for lack of supporting documentation is demonstrated by the reasoning of the United States Court of Appeals for the Seventh Circuit in *In re Stoecker*[16] and the result reached therein. In *Stoecker*, the only decision on this issue by a Court of Appeals, the bankruptcy court disallowed a creditor's proof of claim *without leave to amend*, because it did not comply with the mandatory requirements of Rule 3001. The Seventh Circuit responded:

> All that the rule says, so far as bears on this case, is that the filing of a proof of claim with the required documentation is prima facie evidence that the claim is valid. Fed. R. Bankr.P. 3001(c), (d), (f). If the documentation is missing, the creditor cannot rest on the proof of claim. It does not follow that he is forever barred from establishing the claim.... A creditor should therefore be allowed to amend his incomplete proof of claim (what is often called an "informal proof of claim") to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing.[17]

The Seventh Circuit did not say that the trustee should be prevented from objecting to the proof of claim for lack of required documentation. Nor did the Seventh Circuit say that the trustee's objection should have been overruled. Instead, the court provided the claimant with an opportunity to prove the validity of its claim, and noted that failure to do

so would result in disallowance of the claim. This is the only tenable result, for if the trustee has no documentation regarding the claim, his or her duty to investigate the validity of the claim is severely diminished, if not completely destroyed.

## B. Standard of Evidence Required for Shifting the Burden of Proof

The second question is whether the bankruptcy court correctly refused to shift the burden of proof from B–Line to the Trustee. More specifically, the question is whether something other than satisfying the Rule 3001(f) requirements for *prima facie* validity will shift the burden of proof from the claimant to the party objecting to the claim. As the bankruptcy court accurately pointed out, "[t]he placement of the burden of proof in the claims adjudication process controls the outcome of this case."[18]

The Supreme Court stated that "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it."[19] The bankruptcy court held that B–Line failed to meet its burden of proof to substantiate its Claim, and that the burden to disprove claims without any documents to support their validity should not be placed on the Trustee.[20] I agree. A trustee does not have firsthand knowledge of the debtor's financial affairs.[21] Assigning a trustee the diffi-

mentation encouraged to hide that information from the trustee?

**16.** 5 F.3d 1022 (7th Cir.1993).

**17.** *Id.* at 1028.

**18.** *In re Kirkland,* 361 B.R. 199, 202 (Bankr. D.N.M.2007).

**19.** *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

**20.** *In re Kirkland,* 361 B.R. at 204.

**21.** See *In re Cluff,* 313 B.R. 323, 343 (Bankr. D.Utah 2004), *aff'd, Cluff v. eCast Settlement,* No. 2:04–CV–978, 2006 WL 2820005 (D.Utah Sept. 29, 2006) ("The Chapter 7 or 11 trustee is not privy to the personal history of the

cult task of "proving a negative" is wholly inconsistent with the mandate that the Rules "be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." [22]

Although bankruptcy courts agree that "[i]f objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim," [23] they disagree about what is required to shift the burden of production or going forward with the evidence from a creditor making a claim to an objecting party.[24] The correct answer is found in Rule 3001(f)—"[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." [25] If the *prima facie* standard is met by the creditor, then, and only then, should the burden of producing evidence shift to the objecting party.[26] To hold otherwise would render the documentation requirements of Rule 3001(c) superfluous.[27]

In this case, the bankruptcy court correctly ruled that because B–Line produced no evidence to support its Claim, the Claim was not entitled to *prima facie* validity. As a result, the burden of proof did not shift to the Trustee. The bankruptcy court also ruled that the Debtor's schedules were not admissible against the Trustee, and therefore concluded that the record was devoid of any evidence that would support the Claim. The decision of the bankruptcy court is consistent with this Court's prior decision in *In re Broadband Wireless*[28] where we stated that "if the [proof of claim] were executed or filed improperly it was *not* prima facie evidence of [creditor's] claim, and [*creditor*] would have the initial burden of proving that a claim exists and the amount of that claim. His failure to do so would require the disallowance of his claim." [29] Here, the burden of going forward remained with B–Line, and failing the production of any

---

debtor and does not have first-hand knowledge of the debtor's debts."); *In re Mazzoni,* 318 B.R. 576, 579 n. 14 (Bankr.D.Kan.2004) ("A Chapter 7 or 11 trustee has neither the personal history nor firsthand knowledge of the debtor's debts.").

**22.** Fed. R. Bankr.P. 1001.

**23.** *In re Harrison,* 987 F.2d 677, 680 (10th Cir.1993).

**24.** Although the majority opinion neglects to address this topic head on, this is the pivotal factor in reaching the correct result in this case.

**25.** Fed. R. Bankr.P. 3001(f). A proof of claim is "properly filed," as proscribed by the Judicial Conference in Official Form 10, if it contains "(1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and *(6) supporting documents.*" *In re Armstrong,* 320 B.R. 97, 104 (Bankr.N.D.Tex. 2005) (quoting *In re Hughes,* 313 B.R. 205, 209 (Bankr.E.D.Mich.2004) (emphasis added)). *See also In re Taylor,* 363 B.R. 303, 308

(Bankr.M.D.Fla.2007) ("Attaching supporting documentation is a *mandatory prerequisite* to establishing a claim's *prima facie* validity.") (emphasis added).

**26.** *Prima facie* evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." *Black's Law Dictionary* 8th ed.2004. Therefore, it is the appropriate standard of evidence to require before shifting the burden of proof.

**27.** *In re Taylor,* 363 B.R. at 308 ("In view of this evidentiary effect, the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation that has some evidentiary import and establish something other than the same conclusory allegations set forth in the proof of claim form itself.") (*quoting In re Shank,* 315 B.R. 799, 810 (Bankr.N.D.Ga.2004)).

**28.** *In re Broadband Wireless Int'l Corp.,* 295 B.R. 140 (10th Cir. BAP 2003).

**29.** *Id.* at 145 (footnote omitted).

evidence, the bankruptcy court was required to disallow the Claim.

The majority takes the position that a claim executed under penalty of perjury should be deemed credible even if the claimant can offer no factual basis in its support, so long as the claim was signed by the claimant. The majority apparently sees this as granting a claim some measure of validity that is less than *prima facie* validity. I do not believe that such an animal exists. *Prima facie* validity is not incremental in nature. It either exists or it does not. If a claim is deemed allowed in the face of an objection unless the objecting party presents evidence to defeat the claim, then that claim is provided with *prima facie* validity. Courts that have found that deficient proofs of claim constitute "some" evidence of the creditor's claim and then looked to the objector to present evidence to defeat the claim disregard Rule 3001(f).[30] The decision today likewise grants *every* claim *prima facie* validity, and eviscerates Rule 3001(f). It is imprudent for us to judicially repeal a legitimately enacted Federal Rule of Bankruptcy Procedure.

## C. Disallowance of Claim as Unenforceable

The third and final question is whether the bankruptcy court's decision to disallow the Claim was proper under § 502(b)(1). Section 502(b)(1) provides that a claim shall be allowed, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Although the bankruptcy court did not specifically reference § 502(b)(1), the bankruptcy court disallowed the Claim because, without any evidence to support it, the Claim was "unenforceable."

As stated by the bankruptcy court:

The Code and Rules balance the interests of debtors and creditors by placing the initial burden on a claimant to come forward with evidence to support its claim. The Court will not upset this balance by allowing the Claim without sufficient evidence of its validity.

[B–Line] was required to present some evidence that it has a valid claim. Failing that, the Claim must be disallowed.[31]

Further, B–Line admitted it did not have the ability to prove up the Claim. Surely it would be required to do so under state law. If a creditor cannot establish his or her claim under state law, would that not make the claim "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" for purposes of § 502(b)(1)? For example, if a creditor filed suit on a promissory note or credit agreement, and could not produce the note or agreement, or at least prove its terms, the creditor would lose.

Because the Claim was unenforceable, the bankruptcy court's disallowance of B–Line's Claim was for a reason permitted under § 502. To find otherwise ignores the reality of the situation and exalts form over substance. Such a ruling is inconsistent with the traditional role of a bankruptcy court as a court of equity.[32]

---

30. *In re Tran*, 351 B.R. 440, 447 (Bankr. S.D.Tex.2006), *aff'd* 369 B.R. 312 (S.D.Tex. 2007) ("The issue is not whether the proofs of claim constitute 'some' evidence, but whether they constitute 'prima facie evidence' which, if not rebutted, establishes debtor's liability for the claim.").

31. *In re Kirkland*, 361 B.R. 199, 205 (Bankr. D.N.M.2007) (citations omitted).

32. *Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (ruling that as a court with equitable powers, a bankruptcy court should not allow substance to give way

### III. The Alleged "Exclusive View"

The majority opinion is based upon the premise that there exists an "Exclusive View" contained in some eleven published decisions which supports the conclusion that a Chapter 7 trustee may not file an objection to claim based upon the inability of a claimant to establish the claim's validity.[33] While such a statement fosters a perception that the majority decision in this case is reflective of mainstream thought, it is inaccurate. Rather than lumping these eleven cases together, as the majority does, the facts and legal reasoning of each case must be examined independently. Such an examination reveals that, at best, only one case supports the decision reached by the majority today.

### A. Objection by the Chapter 7 Trustee—*In re Burkett* [34]

*Burkett* is the only case in the so-called "Exclusive View" in which the party objecting to the claim was a Chapter 7 trustee. Like this case, in *Burkett,* the trustee objected based on lack of documentation attached to the proofs of claim. The bankruptcy court centered its analysis on whether there was a legitimate question regarding the propriety of the claim, noting that "[i]f there is no underlying factual dispute as to the validity, ownership or amount of a claim, a debtor or trustee has no basis for filing an objection for lack of documentation unless the debtor or trustee

alleges a basis that would require reduction or disallowance under § 502." [35]

However, the court in *Burkett* also stated that

On the other hand, if a proof of claim lacking proper attachments does not correlate to a debt scheduled by the debtor, or aspects of the claim differ from the scheduled debt, this may give rise to a valid objection by the debtor or trustee for lack of verification of ownership and/or the amount of the claim. Because the creditor did not attach documentation meeting the requirements of Rule 3001 and Official Form 10, the creditor's claim would not be entitled to the Rule 3001(f) presumption of validity. Consequently, a failure to respond to the objection could lead to disallowance of the claim and, even if the creditor does respond, the creditor will carry the burden of going forward as well as the ultimate burden of proof to establish its claim at the hearing on the substantive objection.[36]

Notwithstanding this pronouncement, the court overruled the trustee's objections, and informed trustees that as to future cases, "the court recommends that trustees compare the proofs of claim filed in a case against the debtor's schedules. To the extent they do not match, and the proofs of claim are not substantiated by attachments, a trustee may have a basis for a substantive objection based upon the dissimilarities. However, the substantive basis for the objection must be described

---

to form or technical considerations to prevent substantial justice from being done).

**33.** Even though it spends considerable time discussing the cases dealing with claims objections, the majority contends that its decision is made "only on the basis of the language of the statute and the purpose and intent of the Rules." *Majority Opinion* at 347. Most of the majority's statutory inter-

pretation is made without the benefit of supporting authority. I beg to differ.

**34.** 329 B.R. 820 (Bankr.S.D.Ohio 2005).

**35.** *Id.* at 829 (citations and footnote omitted).

**36.** *Id.* at 829–30 (citations and footnote omitted).

clearly in the trustee's objection." [37] In so holding, the *Burkett* court neglected to answer the *key* underlying question: how is a trustee to divine a substantive basis for a claim objection when a claimant fails to provide the documentation necessary to review the claim? The same question goes unanswered by the majority today.

## B. Objection by the Chapter 13 Trustee—*In re Shaffner* [38]

In *Shaffner*, the claims objection was brought by the Chapter 13 trustee. At issue was a claim in the amount of $148.75 submitted by an individual for "services performed." [39] The sole basis for objection was that the claimant did not attach "any documents evidencing the debt." [40] Though she objected, the trustee did not dispute the validity of the claim, and admitted that the claim was unlikely to have generated any documentation. [41] The court overruled the objection, holding that "it is quite clear that the Chapter 13 trustee cannot have [creditor's] claim judicially invalidated simply because the Chapter 13 trustee is of the opinion that [creditor] did not fill out a form correctly." [42] Put another way, the claim in *Shaffner* was allowed because the trustee admitted the claim was valid and that there was no documentation in existence to attach to the claim.

The fact that the *Shaffner* court allowed the claim on these facts does nothing to support the conclusion reached by the majority. In the instant case, the majority concludes that a Chapter 7 trustee may not object to, and a bankruptcy court may

not disallow, a claim where the claimant has refused to provide any evidence to support the validity of the Claim. Unlike *Shaffner*, however, the Trustee does not admit the validity of the Claim nor that supporting documentation is unlikely to exist.

## C. Objections by Debtors

### 1. *In re Cluff* [43]

In *Cluff*, debtors in several Chapter 13 cases filed objections to certain of their unsecured claims. The claims at issue were listed as undisputed in the debtors' schedules. [44] The court noted that "[t]he [d]ebtors' [sic] do not object to the claims because they assert the amounts are not owed; instead they argue that the documentation attached to the claims, if any, does not fulfill the requirements of Fed. R. Bankr.P. 3001(c) and therefore the claims should be disallowed." [45] The *Cluff* court overruled debtors' objections, but in so doing, explained the duty of a creditor whose claim is not entitled to *prima facie* validity:

> *Prima facie* validity simply means that all the facts in the claim are presumed to be true unless disproved by some evidence to the contrary. *If a claim's prima facie validity is lost, then the creditor has the initial burden of proving that the claim exists and the amount of that claim. Failure to fulfill*

---

37. *Id.* at 832.

38. 320 B.R. 870 (Bankr.W.D.Mich.2005).

39. *Id.* at 872.

40. *Id.*

41. *Id.* at 873.

42. *Id.* at 880.

43. 313 B.R. 323 (Bankr.D.Utah 2004), *aff'd, Cluff v. eCast Settlement*, No. 2:04–CV–978, 2006 WL 2820005 (D.Utah Sept. 29, 2006).

44. *Id.* at 327–29.

45. *Id.* at 326.

*this burden results in the disallowance of a creditor's claim.*[46]

More importantly, the *Cluff* court expressly omitted objections by a Chapter 7 trustee from the scope of its ruling:

As a final note, it is important to distinguish these Chapter 13 cases from Chapter 7 or 11 cases in which a trustee reviews a proof of claim asserting that the debtor owes a debt, but the claim does not attach documents supporting the claim. Unless claims are already listed as disputed, unliquidated, or contingent on a debtor's statements and schedules, a Chapter 7 or 11 trustee must examine a debtor's books and records to determine which claims are truly owed and which claims are objectionable. The Chapter 7 or 11 trustee is not privy to the personal history of the debtor and does not have first-hand knowledge of the debtor's debts. A mere formal objection from a Chapter 7 or 11 trustee does not raise the same issues of bad faith which may arise when a debtor, who has personal knowledge of a debt and who has admitted to that debt, later objects to the undisputed claim based on a technicality.[47]

The majority's ruling today is not an adoption of the *Cluff* analysis—instead, it is an extension of the *Cluff* holding to encompass objections by Chapter 7 trustees. That very extension was considered and rejected by the court in *Cluff.*

The majority justifies its reliance upon *Cluff* by contending that the limitation of the decision to claims objections made by debtors is mere *dicta*, and that the ruling applies to objections by trustees as well.[48]

The argument does great violence to the decision of the trial court. The court in *Cluff* tried a real dispute between a debtor and a creditor, basing its decision upon the facts of that case. It chose to restrict its ruling to objections to claims filed by debtors. I am unaware of any legal principle that prevents a court from limiting its ruling to the facts before it. I can only imagine the reaction of the court in *Cluff* if, in a later case involving a claims objection by a trustee, the creditor argued that the court was somehow bound to apply *Cluff* to that trustee. I fail to understand how the majority can rely upon a decision which explicitly rejects the premise which the majority adopts.

### 2. *In re Dove–Nation*[49]

In *Dove–Nation,* a Chapter 13 debtor objected to two claims for credit card debt. Even though the creditors attached account summaries to their proofs of claim, the debtor objected to the claims based on the following: (1) the documentation attached to the claim did not comply with Rules 3001 or 3002; (2) the claimant did not attach the original writing creating the debt or a copy thereof and did not explain why said writing was unavailable; and (3) the claimant failed to attach all of the documents supporting the claim to the proof of claim.[50] The debtor *conceded* she had no valid underlying basis to object to the claims under § 502. Moreover, she originally scheduled the claims as undisputed. Debtor *amended* her schedules to list the claims as disputed *only after* filing

**46.** *Id.* at 337 (emphasis added) (footnote omitted).

**47.** *Id.* at 343.

**48.** *See Majority Opinion* at 346. The majority also applies the *dicta* label to the restrictions

placed by the court in *In re Mazzoni,* 318 B.R. 576 (Bankr.D.Kan.2004). *See discussion infra* at 364.

**49.** 318 B.R. 147 (8th Cir. BAP 2004).

**50.** *Id.* at 149.

objections to the claims. Additionally, the Chapter 13 trustee testified that he had examined the claims and found no reason to object to them.[51] The bankruptcy court allowed the claims.

On appeal, the Bankruptcy Appellate Panel of the Eighth Circuit affirmed, finding that the creditors had substantially complied with the Rules.[52] Citing *Cluff*, the court said "[e]ven if the proofs of claim are not entitled to prima facie validity, they are some evidence of the Claimant's claims."[53] Therefore, the court shifted the burden of proof to the debtor, who presented no evidence to support her objections.

It is impossible to meaningfully compare the facts of *Dove–Nation* with the facts of the case at bar. In *Dove–Nation*, the creditors attached account summaries to their claims. The debtor originally admitted that the claims were valid. The Chapter 13 trustee performed his statutory duty and determined that the claims were meritorious. The effect of the *Dove–Nation* decision was to hold the debtor to the admissions contained in her original schedules. To the extent *Dove–Nation* stands for the proposition that an executed claim, without more, is sufficient to shift the burden of proof from the claimant to the objecting party, I respectfully disagree.

In the present case, the Claim was submitted without corroborating documents. Due to the lack of said documentation, the Trustee was prevented from examining the Claim in order to determine its validity. I fail to see how the result reached in *Dove–*

*Nation* supports the conclusions of the majority today.

### 3.   *In re Heath* [54]

*Heath* was a Chapter 7 case in which debtors objected to various credit card debt claims. Debtors objected only because the claims did not attach supporting documentation; debtors listed the claims as undisputed in their schedules. After a hearing, the bankruptcy court allowed the claims *in the amounts listed on the debtors' schedules, NOT the amounts set forth on the proofs of claim.* In so ruling, the bankruptcy court explained that "[t]he debtors are estopped to file objections inconsistent with their own schedules. . . ."[55] On appeal, the Chapter 7 trustee filed an amicus brief *in support of* the claimants. The Bankruptcy Appellate Panel of the Ninth Circuit affirmed.

The majority touts *Heath* as support for their conclusion, claiming that the court in *Heath* "held that § 502(b) sets forth the exclusive grounds for claims objections."[56] Such a statement ignores the *Heath* court's express statement that "[i]f the creditor does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim,"[57] which supports the bankruptcy court's decision in the present case. Moreover, because *Heath* is so factually dissimilar to the case at bar, it does not support the result which the majority reaches today.

---

51.   *Id.* at 149–150.

52.   *Id.* at 151.

53.   *Id.* at 152.

54.   331 B.R. 424 (9th Cir. BAP 2005).

55.   *Id.* at 428.

56.   *Majority Opinion* at 346.

57.   *In re Heath,* 331 B.R. at 437 (citations omitted).

#### 4. *In re Mazzoni* [58]

In this Chapter 13 proceeding, the debtor objected to four creditors' proofs of claim on the ground that " 'the writing on which the claim is based is not attached to the Proof of Claim.' " [59] The debtor scheduled three of the debts as undisputed, while the fourth debt was unscheduled. The *Mazzoni* court overruled the objections, stating that "in order to prevail on her objections to the Creditors' proofs of claim, [debtor] must come forward with evidence that would minimally 'meet, overcome, or at least equalize' the Creditors' statements on the proofs of claim." [60] The court found that the debtor presented no basis for challenging the validity of the creditors' claims. [61]

However, the court also distinguished its case from one in which the *trustee* might object:

> Like the court in *In re Cluff*, this Court agrees that it is important to distinguish a Chapter 13 debtor's right to object to a proof of claim on the ground that no documents were attached supporting the claim from a Chapter 7 or 11 trustee's rights. A Chapter 7 or 11 trustee has neither the personal history nor first-hand knowledge of the debtor's debts. As a result, a Chapter 7 or 11 trustee's objection to a proof of claim on the ground that no documents were attached supporting the claim likely mandates a different analysis and conclusion. [62]

As in *Cluff*, the holding in *Mazzoni* does not support the majority, and the court's comments favor affirmance of the bankruptcy court's decision in the present case.

#### 5. *In re Relford* [63]

*Relford* involved an objection to claim filed by a Chapter 13 debtor. The debtor scheduled the claim as undisputed in the amount of $800. The claim, which was for unpaid credit card charges in the amount of $771.14, had an account summary attached to it. In addition, the claim contained a statement advising that detailed monthly statements for the credit card were available and providing the name of a contact person should anyone desire to see those records. The debtor objected to the claim on the basis that the account summary did not provide sufficient documentation regarding the claim. The debtor also objected on the basis that the claimant had failed to provide sufficient proof that it was the holder of the claim, i.e., there was no proof that the claim had been properly assigned to the claimant.

The bankruptcy court overruled the debtor's objection to claim. The court noted that, although the deficiencies in the claim precluded it from being afforded *prima facie* validity under Bankruptcy Rule 3001(c), the admission in the debtor's schedules regarding the claim amount, together with the admission that the claim was not disputed, were sufficient to justify allowance of the claim. The court required the claimant to file an amended claim within thirty days that included the appropriate proof of assignment.

In overruling the debtor's objection, the *Relford* court made the following statement:

> The Court agrees with *Cluff, Kemmer* and *Shank* to the extent they hold that noncompliance with Rule 3001 does not

---

**58.** 318 B.R. 576 (Bankr.D.Kan.2004).

**59.** *Id.* at 577.

**60.** *Id.* at 579 (footnote omitted).

**61.** *Id.*

**62.** *Id.* at 579 n. 14 (citations omitted).

**63.** 323 B.R. 669 (Bankr.S.D.Ind.2004), *reh'g granted, as amended.*

necessarily mean that the claim *must* be amended to include the missing documentation in order to be allowed. The Court disagrees, however, that amendment of the claim is required only when the debtor has posed a substantive objection to the claim. In this Court's opinion, the determinative question is whether the preponderance of the evidence supports allowance of the claim as filed. For instance, if a debtor's schedules are consistent with the amount set forth in the deficient claim and do not indicate that the debt is "disputed," "unliquidated" or "contingent," the creditor may ask the Court to take judicial notice of the schedules as additional evidence for its claim. Based on that evidence, *and in the absence of contrary evidence or objection presented by the debtor,* the Court would likely allow the claim as filed, *i.e.,* without requiring that it be amended to provide additional documentation.[64]

Additionally, the court warned that claimants are expected to comply with Rule 3001 and should not rely solely on the debtor's schedules because they do not carry the same evidentiary weight with regard to objections made by parties other than the debtor.[65]

As in the case on appeal, the question considered by the *Relford* court was "whether the preponderance of the evidence supports allowance of the claim as filed."[66] Based upon admissions made by the debtor, the *Relford* court found that the preponderance of the evidence supported allowance of the claim. In the case under review, based upon the absolute lack of evidence presented by B–Line, the bankruptcy court found that allowance of the Claim was not appropriate. The logic behind both decisions is strikingly consistent.

### 6. *In re Kemmer* [67]

In this Chapter 13 case, the debtors objected to nine unsecured claims for credit card debt and other credit accounts.

> The Debtors ground[ed] their Objections to Claims solely upon the argument that each creditor failed to meet the requirements set forth in Rule 3001(c) of the Federal Rules of Bankruptcy Procedure, averring that "the claim was based on [a] writing and the original and/or duplicate was not contained with the claim. The claim has no paper writing."[68]

The court found that the debtors did not truly dispute the existence or the amount of the claims.[69] In addition, the Chapter 13 trustee *supported* claim allowance, arguing that "the Debtors' Objections to Claims were not initiated at the Debtors' request, were not grounded in fact, and were contrary to the spirit and intent of the Bankruptcy Code."[70] Once again, the *Kemmer* facts could not be more different from the facts at bar.

### 7. *In re Moreno* [71]

The *Moreno* decision involved objections to claims by Chapter 13 debtors in two separate cases. In each case, the sole basis for objection was "the claimant's alleged failure to attach to the claim documentation sufficient to comply with Rule

---

64. *Id.* at 676 (citations omitted).

65. *Id.*

66. *Id.*

67. 315 B.R. 706 (Bankr.E.D.Tenn.2004).

68. *Id.* at 710.

69. *Id.* at 717.

70. *Id.* at 711.

71. 341 B.R. 813 (Bankr.S.D.Fla.2006).

3001(c), Fed. R. Bankr.P." [72] With respect to one of the claims, the debtors scheduled the claim as undisputed in an amount in excess of the amount set forth on the proof of claim. All but one of the claims were scheduled as undisputed; the final claim at issue was not scheduled. The court overruled the debtors' objections and allowed each claim in the claim amount. Further, the *Moreno* court allowed the debtors (should they so desire) to renew their claim objection to the extent that the claim amount exceeded the scheduled amount, but *only* to such an extent. In other words, the debtors were bound by the admissions in their schedules.

There can be little doubt as to the ill the court was trying to cure in *Moreno:* "The gig is up, however, on debtors taking advantage of the cost of responding to claims objections and obtaining orders striking claims which the debtor has acknowledged owing in whole or substantial part." [73] No such malaise exists in the present case.

### 8. *In re Guidry* [74]

In this Chapter 13 case, the debtors objected to two credit card claims acquired by eCAST. Both claims were scheduled as undisputed. One claim was for $100 more than the debtors scheduled; the other claim was for 16 cents more than the scheduled amount. The sole basis for objection was that the claims did not comply with Rule 3001(c). In overruling the objections, the court restricted its decision to the particular facts presented, and cited *Cluff* for the proposition that a Chapter 7 or 11 trustee, "lacking any indication that

an undocumented claim is valid, might well object that the claim is not owing." [75] Given this limiting statement, *Guidry* offers no support for the result reached by the majority today.

### 9. *In re Shank* [76]

In this case, the party objecting to claims was a Chapter 13 debtor. The issue before the court was whether claims should be disallowed solely because they did not comply with Rule 3001. The *Shank* court overruled the objections, finding that "[t]he debtor has neither denied liability on the claims nor asserted that they overstate the amount she owes." [77]

Notwithstanding that the court overruled debtor's objections, it further stated

A debtor or other objecting party (such as a trustee) is clearly entitled to receive documentation and other information about a creditor's claim if there is a question about it. The Court expects creditors who file proofs of claim like the ones in this case to respond promptly and fully to an appropriate request for information; if their failure to do so precludes an objecting party from determining the debtor's liability or amount thereof, then an objection asserting same will be appropriate. In the context of a legitimate basis for questioning a claim and an appropriate request, formal or informal, for supporting documentation, a creditor who stands on an unadorned proof of claim such as the

---

**72.** *Id.* at 814.

**73.** *Id.* at 819–20.

**74.** 321 B.R. 712 (Bankr.N.D.Ill.2005).

**75.** *Id.* at 715 n. 2 (citing *In re Cluff,* 313 B.R. 323, 343 (Bankr.D.Utah 2004), *aff'd, Cluff v.*

*eCast Settlement,* No. 2:04–CV–978, 2006 WL 2820005 (D.Utah Sept. 29, 2006)).

**76.** 315 B.R. 799 (Bankr.N.D.Ga.2004).

**77.** *Id.* at 801.

ones in this case may well find itself with a disallowed claim.[78]

This portion of the *Shank* decision supports the decision of the bankruptcy court in the case at bar. Here, the Trustee requested documentation from B–Line to establish the validity of the Claim. B–Line freely admitted it has no such documentation and cannot establish the Claim, and thus "stands on an unadorned proof of claim."

Additionally, the *Shank* court noted:

One consequence of a proof of claim executed and filed in accordance with the bankruptcy rules is that the claim is entitled to a presumption of validity. In view of this evidentiary effect, the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation that has some evidentiary import and establish something other than the same conclusory allegations set forth in the proof of claim form itself.

If this requirement imposes a burden on eCast and other holders of consumer debt, it is unavoidable. The fact that a party's business practices make it difficult to produce evidence to prove its case does not permit courts to ignore evidentiary rules in deciding a disputed matter.... [A] burden should not be placed on a party gratuitously; a purpose should be served thereby. The requirement here is not gratuitous and does serve a valid purpose. Creditors who want their claims to have the evidentiary presumption that a claim is *prima facie* allowable must meet the requirements of Rule 3001.[79]

The above language supports disallowance of the Claim. This judge is at a loss to understand how the Trustee can be expected to state a detailed reason why the Claim is defective without any information regarding the Claim.

### D.  Summary

There simply is no majority of cases which supports the result reached by my colleagues today. Only the facts and reasoning of *Burkett* mesh squarely with the majority's holding, and *Burkett* fails to answer the question of what a trustee is to do when faced with an undocumented claim. The ten other cases cited by the majority were decided on substantially different facts. In nine of the cases, the debtor was the objecting party. In all nine of those cases, the debtors scheduled the debts as undisputed and/or admitted they held no substantive grudge against the claim. I take no issue with decisions which stand for the principle that debtors are not allowed to game the system. I take great issue with holding that a Chapter 7 trustee should not be allowed to object to a claim which is filed without any supporting documentation.

In the tenth case, *Shaffner*, the claims objection was filed by the Chapter 13 trustee. That same trustee admitted the validity of the claim for services at issue and that the claim was unlikely to have generated any documentation. The same is not true of the case before us today.

### IV.  Affirming the Decision of the Bankruptcy Court Would Not Wreak Havoc on Claims Litigation in the Bankruptcy System

The majority uses hypotheticals and assumptions not in the record before us to suggest that affirming the bankruptcy court's decision would open a "Pandora's box" in the world of claims litigation.[80]

78.  *Id.* at 816.

79.  *Id.* at 810 (citation omitted).

80.  *Majority Opinion* at 352.

If this Court were to adopt the Nonexclusive View, it would be imposing a duty on trustees to file an objection to every proof of claim that fails to attach supporting documents, or is otherwise deficient, even in cases where trustees anticipate making distributions to creditors. It would greatly increase the number of claims objections, and hearings, and judicial determinations of claims.[81]

The majority's assertion that affirming the decision of the bankruptcy court would encourage claims litigation lacks merit. The majority correctly points out that trustees have discretion in deciding when to object to claims, and should only object to claims "if a purpose would be served."[82] The Pandora's box argument assumes that trustees will abuse their discretion and run amok, objecting to every claim that is filed without documentation. Nothing in the record supports such an assumption.

The majority also mischaracterizes my position when it states that "[t]he dissent appears to believe that this duty [of a trustee under § 704(5)] requires a trustee to substantiate each claim."[83] That is not what I am saying at all. What I am saying is that a trustee has the right to satisfy herself or himself that a claim is proper, or that an objection is or is not warranted under the circumstances. In order to do that, a trustee must have access to the documentation which supports the claim. A creditor's admission that it cannot prove the validity of its claim is a sufficient basis upon which a trustee

can stand before the court and say, "this claim should not be paid." Once again, I fail to see either the controversy in or the earth-shattering nature of such a conclusion.

As further support for its position, the majority posits the following hypothetical:

Consider as well a case in which a former spouse files a claim for past due child support, but does not attach the court order establishing the amount of the support. If the trustee objects due only to the lack of documentation, and the former spouse fails to take any action to request a hearing, must the court deny the claim? Even if the debtor scheduled the same debt?[84]

The majority has certainly chosen a most sympathetic claimant, as no one with a heart can help but be touched by the prospect of a child being deprived of basic necessities at the hands of a deadbeat parent. However, in this hypothetical a claim for unpaid child support would be granted priority status, and would be paid prior to all other unsecured creditors.[85] If a creditor files a claim without any supporting documentation, saying, in effect, "pay me first," should the trustee be barred from objecting to the claim on the basis that, before conceding the priority, the trustee wants some proof of its validity? Is the creditor entitled to say to the trustee, "I don't have the documentation and you can't object on that basis"? The majority seems to think so, and I respectfully disagree.[86]

81. *Id.* at 348.

82. *Id.* at 350.

83. *Id.* at 351.

84. *Id.* at 352.

85. *See* 11 U.S.C. § 507(a)(1)(A).

86. This judge has been unable to uncover a single decision with facts that even remotely resemble the facts of this hypothetical. It appears that the majority had the same problem, as they cite no cases which are factually similar to their dire proposal. Creditors owed unpaid child support in bankruptcy cases are rarely, if ever, passive. Moreover, the proof required under the hypothetical (a copy of the divorce court order awarding

The majority also cites a learned treatise for the proposition that the trustee should rely upon the debtor to review claims and advise as to when an objection is appropriate.[87] The citation is certainly accurate. This judge has great respect for the *Collier* treatise. In this instance, the treatise contains no authority for its proposition—not one case is cited to support the proposition that debtors are a viable resource for trustees in determining the validity of claims. There is nothing in the record before us to indicate that the Debtor took on the duties of the Trustee in reviewing claims in this case. Finally, nothing in this judge's experience leads me to believe that a debtor is a viable resource for the trustee in determining the validity of claims.

## V. The Majority's Analogy to Rule 3001(d) is Misplaced

The majority's reliance on Rule 3001(d), to the effect that "a long line of cases, from the Supreme Court on down, have held that creditors do not have to file any proof of claim, let alone one which attaches evidence of perfection, in order to maintain their lien right,"[88] has no bearing on the result they reach today. The issues of claim allowance and validity of liens are horses of entirely different colors.

While a secured creditor need not file a claim to have its lien survive, it must file a claim in a Chapter 7 case in order to participate in any estate distribution. The invalidation of lien rights does not equate with participation in distributions from a bankruptcy estate. Eventually, in order to enforce that lien, the creditor is going to have to prove up. If that creditor wants

relief from the automatic stay and/or an order of abandonment of its collateral in order to enforce that lien, it will be required to come before the bankruptcy court and establish the amount of its debt and the validity of its lien, unless both the debtor and the trustee concede their validity. This is hardly a coincidence.

## VI. Criminal Penalties Are Not Part of the Claims Allowance Process

The majority's argument that criminal penalties are the proper method of ensuring the validity of claims is not persuasive.[89] The claims allowance process is not analogous to a criminal prosecution based upon the filing of a false claim. Claims are subject to disallowance for a variety of reasons. Criminal penalties apply only to persons "knowingly and fraudulently" presenting false claims. There is a vast difference between an invalid claim and a claim submitted so "knowingly and fraudulently" as to subject the person filing the claim to criminal liability. Surely the majority is not suggesting that for a claim to be disallowed, it must have been filed with fraudulent intent. The issue here is not one of criminal liability, but rather, whether a claim should be paid when that claim cannot be proven.

## VII. Scope of Remand

The majority has chosen to "reverse the bankruptcy court, and remand for the entry of an order consistent with this decision."[90] With all due respect, such a mandate strikes me as vague. The majority does not advise the bankruptcy court whether the Claim is to be allowed or disallowed. Moreover, the Trustee raised an issue regarding the validity of the as-

---

child support) is readily accessible as a matter of public record.

**87.** *Majority Opinion* at 351, *citing* 6–704 *Collier on Bankruptcy* ¶ 704.09[1] (15th ed.1999).

**88.** *Id.* at 352.

**89.** *Id.* at 349.

**90.** *Id.* at 354.

signment of the Claim which was not reached by the bankruptcy court. Given the majority's broad statement that Chapter 7 trustees are not to object to claims on the basis of lack of documentation, is the Trustee free to renew his argument? Is the bankruptcy court free to consider such an argument? I respectfully submit that the parties and the bankruptcy court are entitled to answers to these questions.

The majority suggests that providing the bankruptcy court with such guidance would be improper, as

> [t]he Trustee's ability to amend, or for that matter, B–Line's ability to amend its Claim to state that the supporting documents have been lost, are issues not properly before this Court. Our ruling is expressly limited to overruling the bankruptcy court's disallowance of the Claim based solely on the lack of supporting documentation.[91]

The bankruptcy court disallowed the Claim. The majority has reversed that decision. Certainly B–Line will return to the bankruptcy court and state, "you must now allow the Claim. The Bankruptcy Appellate Panel has spoken. Anything short of claim allowance would run contrary to the majority opinion." The Trustee will state, "all the Bankruptcy Appellate Panel did was invalidate your basis for claim disallowance. You can (and should) go forward on the other issues which I have raised, and should let me amend my objection to satisfy the concerns of the Bankruptcy Appellate Panel." The bankruptcy judge will be left to face this dilem-

ma with nothing more than the instruction to enter "an order consistent with this decision." I, for one, do not envy his position.

## VIII. Conclusion

This case does not involve a "technical deficiency," as the majority suggests. It involves a trustee's obligation to perform his or her statutorily prescribed duties. The fact that the Debtor does not contest the Claim is irrelevant.[92] As a practical matter, it is paramount to the claims process that someone else—the trustee—be permitted to object to invalid claims.

Someone who seeks payment from a bankruptcy estate should be required, upon request, to prove their legal right to the funds. If a creditor attaches the documentation required by the Rules, the claim itself becomes the first, and perhaps final, step in the process—it stands as *prima facie* evidence of the claim. If a claimant does not comply with the Rules, and cannot supply other evidence to support its claim, upon objection by the trustee, the claimant loses—hardly a controversial result. The majority decision prevents a trustee from objecting to a claim where the creditor fails to establish its right to payment. Such a rule does not aid in the just and speedy determination of claims. I would affirm the decision of the bankruptcy court.

**91.** *Id.* at 354 n. 53.

**92.** Indeed, if the Chapter 7 estate is insolvent, a debtor lacks the necessary standing to object to claims, thereby rendering its silence on the issue mandatory. *See In re Creditors Serv. Corp.,* 206 B.R. 174, 176 (Bankr.S.D.Ohio 1997) ("It is a long-standing principle of bankruptcy administration that where all claims of creditors will not be paid and there

will be no surplus to the debtor, there is no standing to object to the administration for lack of any pecuniary interest in the liquidation of assets and distributions to creditors."); *Caserta v. Tobin,* 175 B.R. 773, 774–75 (S.D.Fla.1994) ("[C]ourts have consistently held that a chapter 7 debtor is not a party in interest for the purpose of objecting to creditors claims.") (citations omitted).