Separate orders will be entered consistent with this opinion.

In re Terry L. VANCLEEF, Debtor.

No. 07–21960 JPK.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Sept. 28, 2012.

Daniel W. Matern, Chicago, IL, for Debtor.

## MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

The matter addressed by this Memorandum of Decision is essentially a hybrid issue arising from multiple objections filed by the debtor Terry L. VanCleef ("Van-Cleef") to matters brought before the court by actions of Stacia L. Yoon, Trustee of the Chapter 7 bankruptcy estate of Terry L. VanCleef ("Trustee Yoon"). The genesis of the matter is the record # 33 Trustee's Application for Compensation and Expenses filed by Trustee Yoon on November 4, 2011, to which VanCleef responded by his record # 41 Debtor's Motion to Suspend Judgment. Additionally, as record # 39 filed on November 28, 2011, VanCleef filed his Debtor's Omnibus Objection to Claims Number 3 Through 18,

stating his assertions of objection to claims which Trustee Yoon filed on November 2, 2011 with respect to all but one creditor listed by VanCleef in the Schedule F initially filed in his case.[1] In addition to asserting that each of the claims filed by Trustee Yoon suffer from procedural and documentary insufficiencies, VanCleef asserts generally that applicable provisions of the Bankruptcy Code do not authorize a Chapter 7 Trustee to file claims on behalf of creditors—who had been provided with notice of the claims' filing deadline and had not filed claims—under the circumstances of this case. Trustee Yoon responds that applicable provisions of law indeed authorized her to file claims on behalf of these creditors.

The court deemed the Omnibus Objection to be an appropriate document by which to contest all of the claims filed by Trustee Yoon and to contest the underlying legal premise which she asserted allowed her to do so. Technically, each claim and the objection to it constitutes a separate contested matter. Rather than conduct separate hearings with respect to each claim objection, the court determined that the underlying legal issue concerning the premise utilized by Trustee Yoon with respect to filing of claim numbers 3 through 18 would first be addressed. By record entry # 51, the court entered the following order:

It is ORDERED that the court's entry of a final order regarding the record # 33 application is suspended pending determination of the debtor's objections to claims filed by the trustee on behalf of creditors.

The United States Trustee declined to file a legal memorandum. By record entry # 52, the court suspended final consideration of Trustee Yoon's # 33 Application and VanCleef's objection thereto "pending determination of the debtor's objections to claims filed by the trustee on behalf of creditors". The parties filed their respective legal memoranda; by record entry # 67, the court denied Trustee Yoon's motion to strike VanCleef's memorandum because it was filed one day after the deadline established by the court.[2]

The issue in the contested matter presently before the court, addressed by this memorandum of decision, is the scope of 11 U.S.C. § 501(c) and Fed.R.Bankr.P. 3004 in the context of a Chapter 7 Trustee's filing of proofs of claim on behalf of creditors who themselves failed to, or declined to, file timely claims of their own.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b); and N.D.Ind.L.R. 200.1. The matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## ANALYSIS

Some background concerning case number 07–21960 will set the stage for the issue to be addressed.

Case number 07–21960 was initiated by a voluntary petition filed by Terry L. VanCleef on July 27, 2007. VanCleef's Sched-

---

1. The only creditor designated by VanCleef in his schedules which filed a claim on its own behalf was NorthWest Indiana Cardiovascular. VanCleef filed an objection to this claim as record # 29 on September 6, 2011; the court sustained VanCleef's objection by the order entered as record # 31 on October 14, 2011. VanCleef filed claim # 2–1 in this case, asserting his entitlement to distribution from the estate; the court sustained Trustee Yoon's objection to claim # 2–1 by docket order # 57 entered on February 24, 2012.

2. Even had the court sustained Trustee Yoon's motion to strike VanCleef's legal memorandum, the result and analysis stated in this memorandum of decision would be the same.

ules—including Schedules D, E and F in relation to his disclosure of creditors and debts—were also filed on July 27, 2007. Stacia L. Yoon was appointed as the Trustee to administer the bankruptcy estate in this case, and she filed a "no asset report" on August 29, 2007. VanCleef was granted his discharge by order entered as record entry # 10 on November 5, 2007, and the case was closed by order entered on November 8, 2007.

In 2010, VanCleef—through his attorney—advised Trustee Yoon that VanCleef appeared to have a claim in a class action lawsuit brought against Glaxo Smith Kline with respect to the drug Advandia (used in the treatment of diabetes).[3] Trustee Yoon filed a motion to reopen the Chapter 7 case to administer assets—the class action claim proceeds; obtained an order (record # 19) authorizing the Trustee to employ counsel to represent the Trustee in the case; and by record # 21 filed a Preliminary Inventory Report and Request for Notice to Creditors, pursuant to Fed. R.Bankr.P. 3002(c)(5). The notice required by that Rule was provided (record entry # 22); as previously noted, only NorthWest Indiana Cardiovascular filed a claim in response to the notice. Following the claim filing deadline provided to noticed creditors, Trustee Yoon then filed claims on behalf of all unsecured creditors listed in VanCleef's Schedule F, with the exception of NorthWest Indiana Cardio-

vascular. In each of those claims, the Trustee designated the amount of the claim as the amount of the debt stated by the debtor in relation to that creditor in Schedule F, and utilized the addresses for those creditors provided by VanCleef at the inception of his case. The case then proceeded as previously stated above.

■ The principal statutory provision at play in this case is 11 U.S.C. § 501(c), which states:

> (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

The principal bankruptcy rule involved is Fed.R.Bankr.P. 3004, which in pertinent part states:

> Rule 3004. Filing of Claims by Debtor or Trustee
>
> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.

Trustee Yoon asserts that the plain language of the foregoing provisions enables her, as the Chapter 7 Trustee, to file

---

**3.** Trustee Yoon characterizes this claim as "undisclosed" in the debtor's initial schedules. While that is true, no issue has been presented to the court, and no evidence has been submitted, as to whether or not VanCleef was aware of the existence of that claim at the time the case was filed, or when VanCleef became aware of the claim. What the record does show is that VanCleef, through his counsel, advised Trustee Yoon of the claim in a manner which allowed Trustee Yoon to engage special counsel to pursue the claim on behalf of the debtor, and enabled the Chapter 7 Trustee to recover VanCleef's class action

recovery for the benefit of the Chapter 7 estate [as approved by the court's record # 27 order entered on August 24, 2011, which authorized the Trustee to settle the class action claim for the gross amount of $63,912.78, and the net amount for administration through the Chapter 7 estate of $28,133.57]. There is thus no issue in this matter as to the debtor's conduct with respect to disclosure of the claim, and no evidence whatsoever of circumstances concerning VanCleef's knowledge of the possible existence of the claim prior to notification to the Trustee of its existence in 2010.

claims on behalf of creditors designated by the debtor in the event that such a creditor does not timely file its own proof of claim. In support of her position, she cites a number of cases which indeed determined that there is no reason to look behind the supposed, clear meaning of the statutory and rule language, and thus that a Chapter 7 Trustee can file claims particularly on behalf of general unsecured creditors who do not file their own timely claims. The court will designate this approach as the "hose the debtor" position.

VanCleef, on the other hand, asserts that a Chapter 7 Trustee's filing of claims on behalf of general unsecured creditors in particular who do not file timely claims of their own is outside the scope of, and not within the intended purpose of, either 11 U.S.C. § 501(c) or Fed.R.Bankr.P. 3004. VanCleef cites a number of cases which support his position, and which in essence review the origins for bankruptcy law's allowing a debtor or a trustee to file claims on behalf of creditors who do not do so, determining that the primary scope and purpose of these provisions is to allow the debtor to essentially deal with nondischargeable debts. The court will label this approach as the "put out the fire" approach.

Trustee Yoon's approach—while purportedly based upon a clear reading of legal provisions—results in divestiture of distribution to a debtor pursuant to 11 U.S.C. § 726(a)(6) in a circumstance in which distribution in a Chapter 7 case would otherwise result in the balance of estate property—after payment primarily of administrative claims—being returned to the debtor. Apart from purported adherence to statutory and rule language, the court views the underlying philosophy of this approach to be that a debtor who files a Chapter 7 case and obtains a discharge is not entitled to return of property

if there are any claimants under any circumstance to which property of the estate might otherwise be distributed, ergo, "hose the debtor". The counter interpretation emphasizes that historically, bankruptcy provisions which allowed a debtor to file claims on behalf of creditors when creditors did not do so was primarily to benefit the debtor in relation to reducing the amounts of nondischargeable debts, including tax claims and child support claims; and to reduce co-obligor claims—hence, "put out fires".

The court tasked the parties with focusing in their legal memoranda on whatever legislative history there might be which discussed in any manner the scope and intent of 11 U.S.C. § 501(c) and Fed. R.Bankr.P. 3004. The Rule essentially only implements the statute, and thus it is the focus, scope and intent of the statute which is necessary to explore.

 This court customarily does not deem legislative history, or the comments of proponents of legislation, to be of much relevance in determining the construction to be given to a statute, whether or not that statute appears on its face to be ambiguous. This view is a shared one. As stated in *Exxon Mobil Corporation v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 2626, 162 L.Ed.2d 502 (2005):

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms. First, legislative history is itself often murky, ambiguous,

and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in " 'looking over a crowd and picking out your friends.' " See Wald, Some Observations on the Use of Legislative History in the 1981 Supreme Court Term, 68 Iowa L.Rev. 195, 214 (1983). Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text. We need not comment here on whether these problems are sufficiently prevalent to render legislative history inherently unreliable in all circumstances, a point on which Members of this Court have disagreed.

Trustee Yoon—as have some courts—focuses on what she deems to be a very clearly phrased law, and the fact that there is no legislative gloss or rule parsing which connotes or implies that a Chapter 7 Trustee *cannot* file claims for creditors under the circumstances of this case. However, there is a decided difference between the concept of interpreting a statute as it is written, and the concept of placing that statute in the context of administration of a bankruptcy case in light of its reason for being part of the process. The process of statutory construction embraces both concepts. As stated in *Holloway v. United States*, 526 U.S. 1, 119 S.Ct. 966, 969, 143 L.Ed.2d 1 (1999):

> Writing for the Court in *United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), Justice White reminded us that the language of the statutes that Congress enacts provides "the most reliable evidence of its intent." For that reason, we typically begin the task of statutory construction by focusing on the words that the drafters have chosen. In interpreting the statute at issue, "[w]e consider not only the bare meaning" of the critical word or phrase "but also its placement and purpose in the statutory scheme." *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

While an isolated statute itself may be seemingly clear, the manner in which it operates holistically in a statutory scheme may require interpretation. While 11 U.S.C. § 501(c) itself may seem to be clear, the manner in which it operates in circumstances regarding the administration of bankruptcy cases is not, and it is in this context that the statute must be analyzed. This is not an unusual circumstance in the bankruptcy constellation of the federal statutory universe; See, e.g. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) [11 U.S.C. § 506(d), apparently clear on its face, determined to not apply in Chapter 7 cases]; *Midlantic National Bank*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) [11 U.S.C. § 554(a), apparently clear on its face, construed to not allow outright abandonment of chemically contaminated property by a Chapter 7 trustee]. It is in this context that 11 U.S.C. § 501(c) must be analyzed.[4]

4. In this regard—while not conclusive—it is difficult to overlook a consistent thread of statements by legislators and rule proponents as to the primary purpose of allowing a debtor, in particular, to file claims on behalf of creditors who fail to timely file their own—a consistent thread which *solely* refers to a debtor's ability to provide some distribution for nondischargeable debts. It is this totally consistent pronouncement of legislative pur-

While this particular matter involves considerations in a Chapter 7 case, it must be borne in mind that 11 U.S.C. § 501(c) and Fed.R.Bankr.P. 3004 are fully operative in cases under Chapters 11, 12 and 13. In the Chapter 11 context, the basics of claim filing are stated by Fed.R.Bankr.P. 3003. Unlike other Chapters of the Bankruptcy Code, pursuant to Fed.R.Bankr.P. 3003(c)(2) a creditor or equity security holder whose claim is scheduled, and is not designated as "disputed, contingent or unliquidated"—need not file a proof of claim. Apart from that unique aspect in Chapter 11 cases, in order to participate in voting and distribution in a Chapter 11 case, a creditor or equity security holder must file a claim. It must be borne in mind that not all Chapter 11 cases are ultimately administered by a debtor-in-possession. Many are administered by a trustee appointed pursuant to 11 U.S.C. § 1104(a), and many plans provide for the creation of a trustee to preside over the liquidation of estate assets and distribution to creditors. There are many reasons in a Chapter 11 case why a debtor or a trustee would desire to file a claim on behalf of a creditor who itself failed to do so, for example, in certain contexts, wage claimants; critical vendors; tax liabilities for which a principal of a corporate debtor would otherwise be liable as a fiduciary individually; and in the case of an natural person's child support obligations, the child support obligee.

Cases under Chapter 12 and Chapter 13 are procedurally different from cases under Chapter 11 in the context of designation of a debt of a creditor in a debtor's Schedules. No matter how a debt is scheduled by a Chapter 12 or Chapter 13 debtor—subject to circumstances not ordinarily relevant or existing—pursuant to Fed.R.Bankr.P. 3002(a) an "unsecured creditor or equity secured creditor holder must file a proof of claim or interest for the claim or interest to be allowed ..." While some bankruptcy courts throughout the country may adopt the position that a Chapter 12 or Chapter 13 plan provision which provides clear payment to a creditor eviscerates the need for a creditor to file a claim, the majority position is to the contrary, including the position of this court: in order for a Chapter 13 Trustee to disburse to a creditor, even under the terms of a confirmed plan, that creditor must file a proof of claim. This requirement includes distribution on secured claims provided for by a plan, including payments to be made to the creditors secured by an interest in a motor vehicle or by a mortgage in real property. In Chapter 13 cases in this Division, the primary reason that debtors file claims on behalf of creditors when the creditor fails to do so timely is to allow for distribution to that creditor under plan provisions which effect payment of secured claims under 11 U.S.C. § 1325(a)(5), or cure of mortgage arrearages and maintenance of current payments under 11 U.S.C. § 1322(b)(5). Absent a claim, secured creditors simply do not get paid, which is a serious detriment to the debtor given that a significant number of Chapter 13 cases are filed primarily to "save the car or the house". Among the specific duties of a Chapter 12 Trustee, 11 U.S.C. § 1202(b)(3) requires the Trustee

pose upon which courts which adopt Van-Cleef's position focus. It is difficult to overlook these statements in the context of the manner in which the statute was intended to be implemented in the administration of bankruptcy cases—circumstances which the statute on its face does not address at all. While Trustee Yoon is correct that there are

no statements which state that a Chapter 7 Trustee cannot file claims for unsecured creditors such as she did, there is no statement whatsoever which refers in any manner to distribution to creditors who do not timely file claims—in derogation of distribution to a debtor of surplus proceeds of an estate—as being even a collateral concern of the statute.

to appear and be heard at any hearing that concerns the value of property subject to a lien, or confirmation of a plan. Included within the parameters of these duties is the consideration of payment of claims provided for by a plan to secured creditors, for which no claim has been filed. The same holds true as the duties of a Chapter 13 Trustee under 11 U.S.C. § 1302(b)(2). More importantly, among the duties of a Chapter 13 Trustee is that stated in 11 U.S.C. § 1302(b)(4), that the Trustee "advise, other than on legal matters, and assist the debtor in performance under the plan". Particularly in the context of a *pro se* debtor (and there are more of those in this District than you think), this duty includes advising the debtor that a secured creditor whose filing of a proof of claim is necessary for effectuation of a plan has not filed a claim, so that the debtor may do so. In the context of a *pro se* case, it could be contended that 11 U.S.C. § 1302(b)(4) may even encompass the Trustee's filing of a claim on behalf of a secured creditor which does not file a claim, so that the debtor's case can be effectively implemented[5]. Additionally, pursuant to 11 U.S.C. § 1202(b)(6)/(c) and 11 U.S.C. § 1302(b)(6)/(d), Trustees in Chapter 12 cases and Chapter 13 cases have an enhanced obligation to look out for interests of persons or entities having claims for a domestic support obligation. In this context, it must be noted that the statutory provisions refer to a "claim", and not to an "allowed claim": as stated in 11 U.S.C. § 101(5), the term "claim" has nothing whatever to do with the filing of a proof of claim, and one has a "claim" within the definition of that statute whether or not a proof of claim is filed. In this context, it is certainly not beyond the realm of possibility—especially in a *pro se* case— that a Chapter 12 Trustee or a Chapter 13

Trustee would file a claim on behalf of the obligee of a domestic support obligation, so that a debtor's purpose in filing a plan in relation in part to a debt of this nature could be effected by distributions made during the pendency of the Trustee's administration of the case subsequent to confirmation; *See* 11 U.S.C. § 523(a)(5)/11 U.S.C. § 1322(a)(2) in relation to 11 U.S.C. § 507(a)(1).

Thus, contrary to a statement made by Trustee Yoon in her legal memorandum, there are many reasons why a Chapter 11, Chapter 12 or Chapter 13 Trustee may elect to file claims on behalf of creditors. The primary—if not only—reason a Trustee under these chapters would do so would be to benefit the debtor in the effectuation of a reorganization plan, not to benefit a creditor who simply failed to file—or decided to eschew the filing of—a timely proof of claim on his/her/ its own behalf.

Another consideration with respect to allowing a debtor or trustee to file a claim on behalf of a creditor which fails to timely file its own arises particularly in a Chapter 13 case. In cases under Chapters 7, 11 and 12 under certain circumstances, the late filing of a claim may be overcome by a creditor; Fed.R.Bankr.P. 9006(b); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). However, in a Chapter 13 case, the late filing of a claim is death to a creditor; *In re Greenig*, 152 F.3d 631 (7th Cir.1998). As stated previously, the operation of 11 U.S.C. § 501(c) must be viewed not only in the context of Chapter 7 cases, but also in the context of the three reorganization chapters. Particularly in a Chapter 13, it is incumbent upon a debtor or a trustee to file a claim for particular classes

---

5. The court does not so hold, but the concept has validity nevertheless.

of creditors who do not timely file their own, because absent doing so, there will be no distribution to that creditor—to the detriment primarily of the debtor, not the creditor. It should also be noted that— unlike other chapters of the Bankruptcy Code—in a Chapter 7 case, creditors who file late claims are granted a certain potential dispensation with respect to distribution by 11 U.S.C. § 726(a)(2)(B) and (C), and particularly by 11 U.S.C. § 726(a)(3). In the context of this case, had any of the creditors for whom Trustee Yoon chose to file claims chosen to do so, each of those creditors could have filed an untimely claim and fallen within this distribution scheme—none chose to do so. This is essentially a "second bite at the apple" for creditors who do not timely file claims in a Chapter 7 case, and this "bite" connotes Congress' intent that even late filed claims should be subject to disbursement before the proceeds of a bankruptcy estate are distributed to the debtor pursuant to 11 U.S.C. § 726(a)(6).

Let's analyze the process of claim filing by a creditor. In a Chapter 7, Chapter 12 or Chapter 13 case, the claim filing deadline is provided by Fed.R.Bankr.P. 3002(c), subject to the fact that in this District *all* Chapter 7 cases are initially designated as no asset cases and no claim filing deadline is established in the initial notice to creditors. If the trustee recovers assets for administration, pursuant to Fed.R.Bankr.P. 3002(c)(5), a notice is then issued to creditors to file claims (as was the circumstance in this case). In a Chapter 11 case, pursuant to Fed.R.Bankr.P. 3003(3), the court sets the date of filing of claims; in this Division, the claim filing deadline is stated in the initial notice to

creditors. Thus, in all chapters, creditors are given notice of the deadline for filing proofs of claim. In all chapters, failure of the debtor to provide an accurate address for the creditor which allows the creditor to receive the notice in time to timely file a proof of claim would be a ground for excusing the creditor from the claim filing deadline, or more drastically might impact the debtor by the application of 11 U.S.C. § 523(a)(3). It has always been a mystery to this judge as to why more creditors do not file proofs of claim: many Chapter 7 cases result in distribution to general unsecured creditors; and many, many Chapter 11, Chapter 12 and Chapter 13 cases are required by provisions of applicable law to distribute "disposable income" for the benefit of unsecured creditors, and plans are drafted and implemented accordingly.

So, let's posit a circumstance in which a creditor actually does receive notice of a claim filing deadline and does not file a timely claim. Why might that be? In this context, the overwhelmingly primary reason creditors don't file claims is calculated decisions on the part of the creditors. The decision might be the relatively common view—unjustified in many cases—that the creditor won't receive anything in response to the claim anyway, so why expend the time and money to file a claim. Increasingly, institutional creditors—particularly credit card issuers—"write off" debts at a relatively early stage of their delinquency, and in this circumstance many creditors receive a benefit in determining taxable income on tax returns for doing so.[6] Large institutional creditors may not "write off" debts, but they sell delinquent debts—again at an early stage of delin-

---

**6.** In this context, any payment subsequently received on a "bad debt" written off is a recapture of income, and is the subject of reporting on an amended return—not some-

thing that a creditor who "wrote off" a debt and decided not to file a proof of claim probably really wants to see.

quency—for a drastic discount on the face amount of the debt to entities which specialize in collecting debts of this nature. Thus, the creditor doesn't file a proof of claim because the creditor no longer owns the debt, and in most circumstances of this nature neither the debtor nor the trustee will ever know to whom the debt was sold so that the purchaser can file a timely claim upon provision of notice to do so. Some creditors are just as dysfunctional as some debtors are, and thus they don't protect their rights at all even if they were aware that they should do so. Some creditors—the United States of America at one time in particular—choose to not file proofs of claim due to concerns of waiver of sovereign immunity under 11 U.S.C. § 106, or submission to claims/counter-claims by the debtor/Trustee being subject to bankruptcy court jurisdiction: again, a conscious decision to not file a claim. Because some courts—including this one-base orders for creditors to participate in necessary case administration matters upon a filed proof of claim—and because creditors know this to be true—some creditors do not file proofs of claim to avoid being subjected to a bankruptcy court's jurisdiction to compel them to do something.

Particularly in a Chapter 7 context, a creditor which does not file a timely proof of claim has in nearly all instances made a conscious decision not to do so. In the Chapter 7 context, if the creditor did not receive notice in time to file a timely proof of claim, and the creditor can establish that fact and desires to file a proof of claim, the creditor has that opportunity. Untimely filed claims in Chapter 7 cases get a special dispensation in distribution under 11 U.S.C. § 726(a)(2) and (3). Finally, creditors who are not listed or

scheduled by a debtor in time to file a timely claim—and do not independently have notice or actual knowledge of a case in time to timely file a claim—are benefitted by 11 U.S.C. § 523(a)(3)'s provision that their debts are not discharged.[7]

Given all of the foregoing, why would it be that the intent of 11 U.S.C. § 501(c) would be to allow a Chapter 7 trustee to file claims for general unsecured creditors in a circumstance in which most of them made a conscious decision to not file a claim—or defaulted with respect to their obligation to do so—in order to benefit those creditors who evidenced their intent to not get paid or sat on their rights and did nothing they were required to do? If one reviews the duties of a Chapter 7 trustee under 11 U.S.C. § 704(a), one will be unable to discover a duty by a Chapter 7 trustee to administer a case for the benefit of creditors who either sleep on their rights or, being fully awake, make a conscious decision to not exercise them.

■ The claim filing process in bankruptcy cases, in its various permutations concerning the necessary filing of a claim in a Chapter 11 case under certain circumstances; dispensation given for late filed claims in a Chapter 7 case; mechanisms utilizable for avoiding the consequences of an untimely claim in cases under Chapter 7, 11 and 12; and consequences imposed upon the debtor by 11 U.S.C. § 523(a)(3)—are for the benefit of creditors. However, once a claim filing deadline expires—and 11 U.S.C. § 501(c) and Fed.R.Bankr.P. 3004 allow a debtor or a trustee to file a claim on behalf of a creditor who did not timely file one—the focus shifts to the purpose of that provision being to benefit

---

7. Unfortunately, this is a not frequent, but too frequent, circumstance in a Chapter 13 case in which a debtor files amended schedules to add creditors after the expiration of the claim

filing deadline, given *Greenig's* determination that the claim filing deadline in a Chapter 13 case is an absolute that cannot be extended by a bankruptcy court.

the debtor primarily, or to enable a case trustee to effectively administer a bankruptcy case. There is no reason whatsoever why creditors who make a conscious decision in some manner or simply are so negligent that they fail to make a timely decision—should be benefitted by a distribution in a Chapter 7 case based upon a claim filed by a Chapter 7 trustee so that those creditors receive a distribution, and a debtor does not under 11 U.S.C. § 726(a)(6). Despite all of the pronouncements of a Chapter 7 trustee's fiduciary duty to creditors, a Chapter 7 trustee also has a fiduciary duty to a debtor to administer a case fully and fairly for that debtor [*See,* 11 U.S.C. § 704(a)(1) ], a duty which is disenfranchised and ignored when a Chapter 7 trustee may file general unsecured claims solely for the purpose of distributing monies to creditors who really don't deserve distribution to the detriment of a debtor who does. Not that this arises much, but posit a situation in which a Chapter 7 trustee has knowledge derived from his/her participation in a case that a particular creditor has a valid cause of action for exception to discharge under 11 U.S.C. § 523(a)(2), (4) or (6), but also is aware that the circumstances of which the trustee knows may not be known to the creditor. Could that trustee, commensurate with the duties to creditors *and to the debtor* under 11 U.S.C. § 704—actively engage with the creditor to make certain that the exception to discharge complaint was timely filed? This court says no—that would be improper, and that would be in derogation of a trustee's duty of impartiality to administer a case for the benefit of those who actively participate in it. Given that result, why is distribution to unsecured creditors who mostly intentionally did not file a timely claim be allowed on the trustee's filing of claims on their behalf? The answer is—it shouldn't be.

Now let's look at considerations that relate to the filing of claims under the circumstances of this case. There is no evidence in the record with respect to the matters which the court will now address, but the court challenges anyone to dispute the general principles—posed hypothetically—which the court will now state. This case was filed in 2007 with a Schedule F list of debts derived by the debtor with addresses for creditors provided by the debtor. Trustee Yoon filed proofs of claim in 2011—four and one-third years after the case was filed. It is reasonable to posit that most, if not all, of the creditors who failed to timely file claims in response to the Fed.R.Bankr.P. 3002(c)(5) notice to do so, chose to not file claims by a conscious act. It is reasonable to posit that after more than four years, many of those creditors "wrote off" the debts. It is further reasonable to posit that certain of those debts may have been sold to another entity or assigned to another entity, and the actual holder of the debt is no longer the entity designated in Schedule F. The Trustee based the amount of the claims asserted on behalf creditors for whom she filed claims solely on the debtor's schedules. Again, there is no evidence in the record as to this issue in the context of this case, but the court can safely say that the designation of the amount of a debt in a debtor's Schedule F is notoriously unreliable as to the actual amount owed.[8]

First, to beat a dead horse, in the context of this case and the time period elapsing from its filing to the Trustee's filing of claims—there is no reasonable inference that these creditors even expect to get

---

**8.** The first full paragraph on page 2 of Attorney Matern's legal memorandum states a far more conscientious effort to identify debts— i.e., from a credit report—than that which the court has reason to believe is employed by most debtors and their counsel.

paid or even want to be paid. Put that aside. Let's focus on the issues which claim filing by the Trustee in the context of this case raise.

There is nothing in 11 U.S.C. § 501(c) or Fed.R.Bankr.P. 3004 which eviscerates the ordinary requirements for filing a claim when the claim is filed by either the trustee or the debtor. Among these requirements are those of Fed.R.Bankr.P. 3001(c)(1), which states:

(c) Supporting Information

(1) Claim Based on a Writing

When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

Additional requirements in the case in which the debtor is an individual, such as is the case here, are stated in Fed. R.Bankr.P. 3001(c)(2)(A):

(2) Additional Requirements in an Individual Debtor Case: Sanctions for Failure to Comply

In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

Additionally, Fed.R.Bankr.P. 3001(e)(1) states:

(e) Transferred claim

(1) Transfer of claim other than for security before proof filed

If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.[9]

The parameters of a claim "based on a writing" under Fed.R.Bankr.P. 3001(c)(1) are not defined by the Rule or otherwise by the Federal Rules of Bankruptcy Procedure or by the Bankruptcy Code. However, a simple credit card debt is based on a writing—the initial credit card agreement with the credit card issuer. A simple primary physician's claim is ordinarily represented by a writing—a contract signed by the patient at the initial visit in which the patient—or another person obligated on his/her behalf—agrees to be responsible for the debt and to pay the debt owed to the physician when billed. The court—without evidence in this particular record—will take judicial notice of the mass of its records in Chapter 7 cases to note that particularly Chapter 7 trustees object to claims which they deem to not be supported by a writing as required by Fed. R.Bankr.P. 3001(c)(1). Obviously, without more information than appears in a debtor's Schedule F, it is almost impossible for a trustee to comply with Fed.R.Bankr.P. 3001(c)(2)(A). All of the claims filed by Trustee Yoon in this case consist of one page. A prototype is claim # 5–1, filed by the Trustee on behalf of EBI[10]. Putting aside any issues as to the address utilized by the Trustee in section A of this claim, section B(1) designates "other" as the ba-

**9.** As noted above, it is certainly not unforeseeable that many of the debts listed in an ordinary Chapter 7 debtor's Schedule F have been assigned, sold or transferred prior to the filing of a claim pursuant to Fed.R.Bankr.P. 3004.

**10.** This claim is randomly chosen for exemplary purposes—all of the claims filed by the Trustee are identical in the context of the discussion of this claim.

sis for the claim. This designation in the claim is followed by the phrase "Describe briefly", which of course the Trustee did not complete because the Trustee does not know what the claim is for. Section B(7) of the claim, with respect to **"DOCU-MENTS ATTACHED"**, states "None–Trustee has filed Claim on behalf of Creditor pursuant to Bankruptcy Rule 3004." Again, if the debt ["claim" as defined by 11 U.S.C. § 101(5)] is based on a writing, there is *nothing* in Fed.R.Bankr.P. 3001(c)(1) which excuses the trustee—or even the debtor—from complying with that Rule if a claim is filed under Fed. R.Bankr.P. 3004.[11] The result is that if the claim is based on a writing, and the writing is not attached, the claim is not *ipso facto* disallowed, but it has no prima facie evidentiary effect. A stated in *In re Kendall*, 380 B.R. 37, 43–44 (Bankr. N.D.Okla.2007):

> Bankruptcy Rule 3001 sets forth the procedures under which claims are filed and adjudicated. The procedural rules applicable to this particular case are as follows:
>
> • A creditor must file a written proof of claim setting forth a creditor's claim. "A proof of claim shall conform substantially to the appropriate Official Form." Bankruptcy Rule 3001(a).
>
> • The "appropriate Official Form" is Official Form 10.
>
> • "When a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(c).
>
> • "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f).

If the proof of claim is sufficient to constitute *prima facie* evidence of the validity and amount of the claim, then "[t]he objecting party has the burden of going forward with evidence supporting the objection." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (citation omitted). "Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." *Id.* "Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim." *Id., citing Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir.1993).

However, if the proof of claim is not "executed and filed in accordance with these rules," the claimant is not entitled to stand on its proof of claim as *prima facie* evidence of the validity and amount of the claim, and the claimant has "the initial burden of proving that a claim exists and the amount of that claim." *Broadband*, 295 B.R. at 145.[FN3]

---

FN3. The Court concurs with those courts that have held that merely failing to attach written documentation to a proof of claim does not require outright *disallowance* of the claim; non-compliance with Rule 3001(c) and Form 10 instructions simply deprive the claimant of the presumption that its claim is valid in the amount stated. *See, e.g., In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993); *B–Line, LLC v. Kirkland (In re Kirkland)*, 379 B.R. 341 (10th Cir. BAP 2007) (Section 502(b) does not authorize disallowance of a claim for failing to comply with the documen-

---

11. This decision does not reach any claim-specific issue raised by the omnibus objection filed by VanCleef to claim numbers 3–18 filed

by the Trustee; this ground is raised by the debtor with respect to all of those claims.

tation requirements of Bankruptcy Rule 3001); *In re Taylor*, 363 B.R. 303, 307 (Bankr.M.D.Fla.2007); *In re Burkett*, 329 B.R. 820, 828 n. 2 (Bankr.S.D.Ohio 2005) ("A majority of courts hold that a failure to attach documents purportedly required by Fed. R.Bankr.P. 3001 and Official Form 10 is not, by itself, a basis for disallowance of claim.") (collecting cases).

However, in the face of a valid substantive objection, if the claim is based on a writing that is not attached to the proof of claim, and the presumption of validity does not arise, the claimant is held to the same standard of proof as if the claimant were establishing its claim in a non-bankruptcy forum. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 19–20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1050 n. 6 (5th Cir. 1992); *Kirkland*, No. NM–07–021, 379 B.R. at 347–48, 2007 WL 4465484, at *5 ("In the face of a proper objection, the creditor will have to establish its claim at hearing, bearing whatever burden of proof exists in proving such a claim in a non-bankruptcy arena"); *In re Leverett*, 378 B.R. 793, 799–800 (Bankr. E.D.Tex.2007).

In cases in which the debtor has *not* disputed the debt on its schedules, the admission of the debtor is some evidence of the validity and amount of the claim. But where the debt is disputed, the creditor cannot establish a *prima facie* case of breach of a credit card contract without establishing a contract with the debtor, a breach and damages. If the breach of contract claim has been assigned, the claimant also has the burden of establishing its right to assert the claim. *See Burkett*, 329 B.R. at 829–30 ("if a proof of claim lacking proper attachments does not correlate to a debt scheduled by the debtor, or aspects of the claim differ from the scheduled debt, this may give rise to a valid objection by the debtor ... for lack of verification of ownership and/or the amount of the claim ... [A] failure to respond to the objection could lead to disallowance of the claim and, even if the creditor does respond, the creditor will carry the burden of going forward as well as the ultimate burden of proof to establish its claim at the hearing on the substantive objection.").

Now let's look at the evidentiary affect of a claim filed by a trustee or a debtor under Fed.R.Bankr.P. 3004. 11 U.S.C. § 502(a) states:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

Fed.R.Bankr.P. 3001(f) states:

(f) Evidentiary effect

A proof of claim *executed and filed in accordance with these rules* shall constitute prima facie evidence of the validity and amount of the claim. (emphasis supplied).

In order to have the evidentiary affect of "prima facie evidence of the validity and amount of the claim", the claim must conform to the requirements of Fed. R.Bankr.P. 3001. In many contexts, it will be impossible for the trustee to file a conforming claim unless the trustee expends a great deal of time, and potentially compensable attorney time, to obtain documentation from a debtor [who may or may not have it] or directly communicates with the creditor who has already evidenced his/her/its intent to not be involved with the claim filing process.

■■■ Does the statement of the amount of a debt in a debtor's schedules irrevocably establish the amount of that debt? No. Such a determination would not be an accurate reading of the Federal Rules of Evidence. Fed.R.Bankr.P. 3001(a) states that a "proof of claim shall conform substantially to the appropriate Official Form". As evidenced by the claims filed by Trustee Yoon, that form is submitted under the penalties of perjury that "the Debtor(s) named above is/are indebted to the claimant in the amount shown ... [and] that no unmatured interest is included ..." Putting aside the issue of how the trustee might know that no unmatured interest is included in the amount stated in a debtor's Schedule F, the focus of the

evidentiary effect of a claim filed by a debtor or a trustee is *that claim,* not an extraneous statement made by a debtor in a Schedule. The cardinal rule for admissibility of evidence is stated in Fed.R.Evid. 602:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness *has personal knowledge of the matter.* (emphasis supplied)

A claim filed by a trustee, as were the claims in this case, is *not* based upon personal knowledge of the trustee, but rather is derived by a statement made by the debtor in Schedule F. The trustee's claim is thus based on hearsay, as defined by Fed.R.Evid. 801(c). The declarant in the context of the trustee's claim is the debtor. There appear to be loose statements in reported decisions to the effect that statements made in a debtor's Schedules are *ipso facto* admissible, based upon the concept that the statements are made under oath. That concept appears to somehow be attempted to be based on Fed.R.Evid. 801(d)(2), somewhat colloquially referred to as "an admission by a party opponent". That works when the debtor is an opposing party with respect to an objection to a proof of claim. As stated in *In re Plourde,* 418 B.R. 495, 505 (1st Cir. BAP 2009):

> eCast, on the other hand, produced no agreement, but relied upon the Plourdes' scheduling of the identically-numbered GM Card debt, with a balance approximating the amount of eCast's proof of claim. For the bankruptcy judge, that was sufficient proof to allow eCast's claim, granting the schedule evidentiary weight notwithstanding its hearsay character as to the trustee.[FN13] He credited the Plourdes' schedule and considered it evidence supporting liability as a hearsay statement imbued with sufficient indicia of reliability to be ad-

missible under the federal evidence rules' residuary exception to the hearsay rule.[FN14] The correctness of that conclusion, however, rests on the exception's applicability, which is questionable. One of the rule's requirements is that the hearsay statement "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts...." Can it really be said that a statement in the debtors' schedules is "more probative" on the question of liability on the account than the creditor's own records? That the creditor cannot be expected to procure and proffer its own records to support its claim? [FN15]

---

FN13. Generally, a bankruptcy court may properly consider a debtor's petition, schedules and statement of affairs as evidentiary admissions made by the debtor. *See* Fed. R.Evid. 801(d)(2) (providing that a statement is not hearsay if "the statement is offered against a party and is ... the party's own statement ..."). Therefore, a debtor's schedules may be admissible as nonhearsay evidence to establish the validity and ownership of a claim against a *debtor when the debtor is the party objecting to the claim. See Torgenrud v. Wolcott (In re Wolcott),* 194 B.R. 477, 483 (Bankr.D.Mont.1996); *see also In re Bohrer,* 266 B.R. 200, 201 (Bankr.N.D.Cal. 2001) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as *judicial admissions.").* However, when the objecting party is the trustee, the bankruptcy schedules are not admissible as an admission against the trustee. *See In re Kirkland,* 572 F.3d 838, 840–41 (10th Cir. 2009) (stating that debtor's schedules "were of no evidentiary value against the Trustee"); *Burkett,* 329 B.R. at 829 ("Of course, a debtor's scheduling of a debt does not constitute an admission by the trustee...."); *In re Jorczak,* 314 B.R. 474, 482–83 (Bankr.D.Conn. 2004) (scheduling of a debt constitutes an admission which is binding upon the debtors but not the trustee).

FN14. *See* Fed.R.Evid. 807.

FN15. At least one court of appeals has held that the statements in the debtors' schedules are of "no evidentiary value"

against a bankruptcy trustee contesting allowance of a creditor's claim. *See Kirkland,* 572 F.3d at 840–41. (emphasis supplied)

However, in the broad context of a Chapter 7 bankruptcy case, a debtor is not "an opposing party" to the trustee as soon as the case is filed—a Chapter 7 trustee has a fiduciary duty to a Chapter 7 debtor, in addition to other fiduciary duties owed to creditors and parties-in-interest in a case. Thus, until the debtor (or perhaps the creditor itself) files an objection to the claim filed by the Chapter 7 trustee, there is no "opposing party" to provide the underpinning necessary for the operation of Fed.R.Evid. 801(d)(2). If an objection to the trustee's claim is filed by a creditor, that creditor—*not the debtor*—is the opposing party. If the debtor does not file an objection to the claim filed by the trustee, then NOT ONLY is there is no basis for the operation of a presumption of validity of the trustee's claim, but there is no admissible evidence whatsoever with respect to the claim filed by the Trustee on the face of the claim as filed. Go to the next level. In this court's view, a creditor whose distributive share of a Chapter 7 estate is affected by whether or not the claim of another creditor is allowed has standing and statutory authorization to object to the claim of another creditor [12]. So, if another creditor objects to a claim filed by the Chapter 7 Trustee on behalf of a creditor—based solely on the debtor's Schedule statement—the Trustee's claim has no evidentiary value *whatsoever*: the debtor's Schedule statement is not the ad-

mission of a party opponent (the party opponent is the creditor), and the Schedule F statement upon which the Trustee's claim is entirely based is inadmissible hearsay. A creditor asserting a claim, including Trustee Yoon in this case with respect to the claims she filed on behalf of creditors, has the ultimate burden of persuasion as to the amount of the claim, and thus we get a proceeding in which the trustee's best evidence *in any context* is the assertion of "some evidence" of the amount of a debt based upon a debtor's Schedules, and even then only in a circumstance in which a debtor who can testify from personal knowledge as to what that debt might actually be, objects to the Trustee's claim. The ultimate litmus test failure is that if a creditor objects to the Trustee's claim, the Trustee can present NO admissible evidence which supports the claim.[13] In this context—and in the real time context of when the Trustee's claim is filed—the Trustee's contention is really that claims that have no evidentiary support whatsoever should be allowed. The court responds: Not on my watch ... you yourself as a Trustee has to object to your own claim.

Turning back to the claims filed by Trustee Yoon, as noted above, all of them are based on hearsay, and until contested, there is no evidence at all that is admissible to support the claims. Fed.R.Evid. 802 states the following:

> Hearsay is not admissible unless any of the following provides otherwise:

---

12. A creditor in this position is a "party in interest" for the purpose of 11 U.S.C. § 502(a).

13. A particular circumstance, perhaps applicable in this case due to the passage of time between the debtor's discharge and the filing of claims by the Trustee, is the possibility that the debtor—for any number of reasons—has made payment to a discharged creditor which

has reduced the amount of the "debt" now owed by the debtor from the scheduled amount. 11 U.S.C. § 524(f) allows for this practice, probably not uncommon with respect to recurrent medical providers and other entities with whom a debtor continues a post-discharge relationship—a circumstance for which the Trustee's claim could not possibly account.

- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Finally, the residual exception to hearsay stated in Fed.R.Evid. 807(a), based upon the mere statement of the amount of an indebtedness in a debtor's Schedules, ordinarily will not even satisfy sub-paragraph (a)(1) of that Rule, due to the fact that debtor's Schedules are notoriously inaccurate as to the amount of a debt ultimately asserted by a creditor who files a claim.

The foregoing apply equally to claims filed by debtors in Chapter 13 cases in order to obtain distribution to creditors whom they want to pay under their plans. It is a not uncommon circumstance in Chapter 13 cases that a debtor objects to the "arrearage" amount of a mortgage claim filed by a creditor. Unfortunately, it is not an uncommon circumstance in which that creditor does not appear before the court in response to the objection, so that the actual amount of the arrearage claim can be accurately determined for the purposes of administering the claim. In this context, the court routinely requires the debtor to be able to prove, with evidence satisfactory to the court, the amount of the arrearage claim, based upon the debtor's personal knowledge-based testimony and documentary evidence which establish the amount of the arrearage as of the date of the filing of the petition. If a mortgage creditor does not file a claim at all, and it is necessary for the debtor to file a claim so that cure of the arrearage can be effected pursuant to 11 U.S.C. § 1322(b)(5), again, it is incumbent upon the debtor to be able to prove the amount of the arrearage by evidence or documentation. Debtors in this circumstance are in a much better position than is a trustee to provide testimony or documentary evidence based upon personal knowledge, and thus in some cases it is possible for the debtor to sustain the amount of the arrearage with respect to a claim filed on behalf of a creditor—a necessary exercise in Chapter 13 cases in order to ultimately allow a creditor's records to correlate with proceedings in the Chapter 13 case. This is not the case with respect to claims filed by a Chapter 7 trustees on behalf of general unsecured creditors in the circumstances of this case. The trustee will have absolutely no personal knowledge of the debt owed by the creditor apart from what is stated in the debtor's Schedules [see above], and in most cases the trustee will not be able to file a claim which conforms to the requirements of Fed.R.Bankr.P. 3001 with respect to any debt based upon a writing, or any debt which includes unmatured interest or other fees or costs. In this case, *no claim* filed by Trustee Yoon is in any way based on personal knowledge, and absent the debtor's objection, *no claim* filed by Trustee Yoon would be supported in any way by *any* admissible evidence.

■ The foregoing is meant to state the following. A claim filed by a Chapter 7 trustee under 11 U.S.C. § 501(c) and Fed. R.Bankr.P. 3004—based as are the claims in this case solely upon a statement in Schedule F filed by the debtor—do not have the *prima facie* validity provided for by 11 U.S.C. § 502(a), or the evidentiary effect provided by Fed.R.Bankr.P. 3001(f). Among the duties of a Chapter 7 trustee is that stated in 11 U.S.C. § 704(a)(5) as follows:

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

If claims of the nature of those filed by Trustee Yoon in this case were filed separately by a creditor, certain of those claims should be, and would be, objected to by Trustee Yoon herself, under the foregoing

provision. How is it that a trustee then is able to file claims which she herself would be compelled to object to because they do not conform to the requirements for a filed claim provided by applicable law? Remember: the circumstances of this case are that Trustee Yoon filed claims on behalf of all creditors scheduled in Van-Cleef's Schedule F, on the theory and philosophical premise that creditors who did not look out for themselves should somehow be paid before the debtor receives any estate property pursuant to 11 U.S.C. § 726(a)(6). This practice raises *serious* issues as to effective case administration and the provability of any proof of claim filed by the Trustee, and in fact places the Chapter 7 Trustee in a position of not objecting to her own claim in a circumstance in which a similar claim filed by a creditor would be subject to her obligation to object under 11 U.S.C. § 704(a)(5).

■ In the context of the scope and purpose of 11 U.S.C. § 501(c), the foregoing analysis of the evidentiary effect of a claim filed by a trustee—or by a debtor—is certainly pertinent to the issue at hand before the court. The significant issues raised certainly establish that the purpose of 11 U.S.C. § 501(c) *is not* to benefit creditors, but rather primarily is to benefit debtors who do have in many instances the wherewithal to file a claim based upon personal knowledge and validly support the claim in the manner required by Fed. R.Bankr.P. 3001.

One other issue requires passing mention. Certain of the cases cited by Attorney Matern in his memorandum held that the procedures employed by Trustee Yoon in this case were not allowed because the Trustee expressly stated that the sole purpose of filing claims on behalf of creditors was to enhance his/her trustee compensation. In the event that the proce-

dure employed by Trustee Yoon is allowed to proceed, her compensation as trustee pursuant to 11 U.S.C. § 326(a) will in fact be enhanced. Because the debtor objected to her actions, and the work required to oppose those objections is the work of an attorney rather than that of a trustee, compensation for the trustee's attorney may also be enhanced. The court will categorically state that it does not view the positions taken by Trustee Yoon to be motivated by her desire to enhance compensation. Rather, having had extensive experience with Trustee Yoon, the court believes that Trustee Yoon is genuinely dedicated to disbursing monies to creditors, even in circumstances in which the debtor might experience a detriment. However, the net effect on creditor distribution resulting from the circumstances in this case will be affected by the contested matters arising from the debtor's objection to each of the claims filed by Trustee Yoon, to an extent which cannot be known until all of those contested matters are determined. Given all of the reasons for not allowing the filing of claims by the Chapter 7 Trustee in the circumstances of this case, this consequence serves to support the court's determination. How is a Chapter 7 Trustee's duty under 11 U.S.C. § 704(a)(1) supported, advanced or affirmed by Trustee Yoon's filing of claims numbers 3–18. The answer is … It's not.

In summation, the court does not deem 11 U.S.C. § 501(c) or Fed.R.Bankr.P. 3004 to be facially ambiguous. However, neither the statute nor the rule states the scope and circumstances of their applicability, particularly in the context of filing of claims on behalf of general unsecured creditors by a Chapter 7 trustee in a circumstance in which the creditors did not file timely claims. Once the claim filing deadline has passed—an holistic procedure for the benefit of creditors—the availability of a procedure for a trustee or a debtor

to file claims is not for the benefit of creditors, but rather for the benefit of debtors, and—in the context of a trustee—the effective administration of a bankruptcy estate by a trustee in accordance with the trustee's statutorily prescribed duties. In the circumstances of this case, the claims filed by Trustee Yoon violate the intent and purpose of 11 U.S.C. § 501(c). These claims were filed solely with respect to Schedule F general unsecured creditors, and there is no provision of the Bankruptcy Code or of the Federal Rules of Bankruptcy Procedure with respect to the effective administration of VanCleef's Chapter 7 estate, or with respect to the personal benefit of VanCleef, which is advanced or allowed by Trustee Yoon's filing of such claims.

It is determined that in the circumstances of this case, filing by Stacia L. Yoon, as Trustee of the Chapter 7 bankruptcy estate of Terry L. VanCleef in case number 07–21960, of claims numbers 3–18 on behalf of Schedule F creditors is not authorized by 11 U.S.C. § 501(c), or by Fed.R.Bankr.P. 3004.

It is further determined that as a result of the foregoing, VanCleef's record # 39 objection is sustained as to claim numbers 3 through and including 18 filed by Trustee Yoon.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

A. The filing of claim numbers 3 through and including 18 by Stacia L. Yoon, as Trustee of the Chapter 7 bankruptcy estate of Terry L. VanCleef (case number 07–21960), is not within the scope of the claims allowed to be filed by the Trustee pursuant to 11 U.S.C. § 501(c) and Fed.R.Bankr.P. 3004.

B. VanCleef's Omnibus Objection to Claim Numbers 3 Through 18 (record # 39) is sustained, with prejudice to the Trustee's filing of amended claims.

C. A preliminary pre-trial conference with respect to the record # 33 Application for Compensation, and the record # 41 motion by VanCleef, will be held on **November 9, 2012, at 11:30 A.M.**